This is a corporate income tax case.
James C. White, Commissioner of Revenue of the State of Alabama, appeals the order of the circuit court granting a writ of mandamus requiring him to refund to Kimberly-Clark Corporation (taxpayer) amounts representing overpayments of income tax for the years 1977, 1978, 1979, 1980 and 1981.
In this appeal, the Commissioner alleges that three issues were incorrectly decided by the circuit court. The facts relevant to each issue have been stipulated by the parties and will be related as each issue is discussed.
The stipulated facts relevant to the first issue are as follows:
 "1. The taxpayer is a corporation organized and existing under the laws of the State of Delaware, with its principal executive office in Irving, Texas, and is qualified to do business in the State of Alabama.
". . . .
 "3. As a foreign corporation for State of Alabama income tax purposes, the taxpayer apportioned its income to the State of Alabama for the years 1977 to 1981 in accordance with the three-factor formula used in Department of Revenue regulation 810-3-31-.02 which is applicable to foreign corporations with multistate operations.
 "4. The taxpayer spent the following amounts for operating and maintaining pollution control equipment or devices (noncapital pollution control expenditures) within Alabama:
 Year Amount
1977 $ 734,448 1978 992,176 1979 1,095,521 1980 1,781,789 1981 1,385,028
 . . . . Pursuant to Ala. Code § 40-18-35(13), the taxpayer elected to deduct all of these amounts invested in pollution control facilities from income apportioned to the State of Alabama.
 "5. For Alabama income tax purposes, the taxpayer deducted the noncapital pollution control expenditures from income subject to apportionment."
Section 40-18-35, Code of Alabama 1975, sets out certain deductions that may be taken by a corporation when computing its net income. Generally, if the corporation does business both "within and without" the state of Alabama, these specified deductions are allowed only "to the extent that, such items are referable to or arise in connection with income . . . from sources within the state of Alabama." Id. These expenses are therefore apportioned in order to "fairly reflect the net income of the corporation attributable to its operations in Alabama." Id. However, no such apportionment is required when a foreign corporation elects to take a deduction under §40-18-35(13), Code 1975. This subsection allows a deduction for:
 "All amounts invested during the taxable year in all devices, facilities or structures and all identifiable components thereof or materials for use therein, used or placed in operation in the state of Alabama, or to be used or placed in operation in the state of Alabama, acquired or constructed primarily for the control, reduction or elimination of air or water pollution; provided, that in lieu of deducting such amounts, the corporation may elect to amortize all such amounts over such period, not exceeding the useful life of devices, facilities or structures for which such amounts were expended, as it specifies in its tax return respecting the taxable year during which such amounts were expended, in which case it shall be entitled to appropriate deductions for the taxable years so specified; and provided further, that the taking of any deduction authorized by this subdivision shall be optional with the corporation; and that if any such deduction is taken with respect to such devices, facilities or structures, such corporation shall not be permitted any allowance for depreciation or obsolescence thereof otherwise allowable under this section." *Page 298 
On appeal and in the court below, the taxpayer has taken the position that both capital and noncapital pollution control expenditures are deductible under § 40-18-35(13), Code of Alabama 1975. Under this position, the taxpayer argues that the only question remaining is whether these expenses are deductible from apportionable income (income before application of the apportionment fraction) or deductible from apportioned income (income after application of the apportionment ratio).See Department of Revenue regulation 810-3-31-.02;Kimberly-Clark Corporation v. Eagerton, 445 So.2d 566
(Ala.Civ.App. 1983). The Commissioner, on the other hand, takes the position that § 40-18-35(13) does not allow for the deduction of any noncapital pollution control expenditures. Instead, he argues that any such noncapital expense is deductible, if at all, only as an ordinary and necessary business expense under §40-18-35(1). The trial court accepted the taxpayer's position. For a number of reasons, we disagree and reverse on this issue.
In interpreting a statute, it is the court's duty to ascertain and give effect to the legislative intent as expressed in the words of the statute. Kimberly-Clark, supra;Winstead v. State, 375 So.2d 1207 (Ala.Civ.App.), cert.denied, 375 So.2d 1209 (Ala. 1979). Further, when interpreting a taxation statute, exemptions and deductions must be strictly construed against a taxpayer and in favor of the taxing authority. State v. Hunt Oil Company, 49 Ala. App. 445,273 So.2d 207, cert. denied, 273 So.2d 214 (Ala. 1972); State v.Zewen, 270 Ala. 52, 116 So.2d 373 (1959).
Given these rules of construction, we consider that the legislature did not intend to allow for the deduction of both capital and noncapital expenditures under § 40-18-35(13).
It is generally accepted that a capital expenditure is one made for long-term betterments or additions. See I.R.C. § 263. Such an expenditure is in the nature of an investment chargeable to the future and should be added to the basis of the property improved. Id. These expenditures may not be deducted as ordinary and necessary business expenses. Instead, these must be depreciated over the useful life of the asset.See §§ 40-18-16, -35(6), Code 1975. Thus, a logical relationship exists between a capital expenditure and the tax concepts of "amortization," "useful life," "depreciation," and "obsolescence." No such logical relationship exists between these concepts and a noncapital expenditure.
In § 40-18-35(13), the legislature has allowed that a corporation may elect, "in lieu of" taking the allowed deduction, "to amortize all such amounts over such period, not exceeding the useful life of [the] devices, facilities or structures." Further, if the corporation takes the deduction, it "shall not be permitted any allowance for depreciation orobsolescence thereof." From this language we determine that the legislature was only concerned with balancing the effect of a deduction allowed for capital expenditures. We are convinced that the legislature intended that a deduction be allowed under § 40-18-35(13) only for capital pollution control expenditures.
This interpretation of § 40-18-35(13) is supported by the legislature's use of the term "invested" as a description of the expenditure they intend to make deductible under the section. The terms "invest," "invested" or "investment" are generally associated with capital expenditures made to acquire property or other assets. Cf. Hollingsworth Whitney Co. v.State, 241 Ala. 96, 1 So.2d 387 (1941). See generally Black's Law Dictionary 741 (rev. 5th ed. 1979); Words and Phrases, "Invest, Investment." These terms are generally not associated with noncapital expenditures. Under the strict rules of construction applicable to this case, we cannot, as did the circuit court, construe the word "invested" to mean any expenditure made, whether it be capital or noncapital.
Department of Revenue regulation § 810-3-35-.01(4) presents an interpretation of § 40-18-35(13) that similarly limits the deduction to capital expenditures. This regulation was passed in 1972 and has heretofore stood unchallenged. Under Alabama *Page 299 
law, a tax regulation that has stood unchallenged for a long period of time may be given favorable consideration by the courts. State v. Hunt Oil Company, supra; State v. Zewen,supra. We thus find further support for our interpretation of §40-18-35(13).
Finally, our interpretation of § 40-18-35(13) is not contrary to the supreme court's decision in Eagerton v. Courtaulds NorthAmerica, Inc., 421 So.2d 104 (Ala. 1982).
In Courtaulds, the supreme court upheld the circuit court's decision that fuel oil used in two pollution control devices was a "material" for purposes of applying the sales and use tax exemptions provided by §§ 40-23-4(16) and 40-23-62(18), Code 1975. We do not find this decision controlling on the issue in the current case.
The code sections construed in Courtaulds do not lend themselves to any issue based upon a distinction between a capital and a noncapital expenditure. There is no language even vaguely similar to that contained in § 40-18-35(13) wherein the legislature discusses those tax concepts relating to purely capital expenditures, i.e., "amortization," "useful life," "depreciation" and "obsolescence." Also absent from these sections is any language concerning amounts "invested" or even "expended." There is simply too great a difference in the statutory language of §§ 40-23-4(16), -62(18) and §40-18-35(13) for the supreme court's decision in Courtaulds to be helpful in construing § 40-18-35(13).
The only stipulated facts relevant to a discussion of the second issue are as follows:
 "7. In accordance with the three-factor formula used in Department of Revenue regulation 810-3-31.02, taxpayer's income [for the tax years 1977 through 1979] was apportioned based upon three factors: payroll, property and sales. Sales to foreign countries from Alabama shipping points were included in the computation of the numerator of the taxpayer's sales factor in its original returns."
Pursuant to § 40-18-57, Code of Alabama 1975, the Department of Revenue promulgated regulation 810-3-31-.02. Under this regulation, the taxpayer's apportionable income is apportioned within and without Alabama by application of a three-factor apportionment formula. This formula requires averaging the relative percentages of a taxpayer's property, payroll, and sales. By applying this apportionment percentage to a taxpayer's apportionable income, one can determine that part of the taxpayer's income that is apportionable to Alabama.
The sales factor in this formula is a fraction, the numerator of which is the total sales made by the taxpayer in Alabama during the tax period and the denominator of which is the total sales made by the taxpayer everywhere during the tax period. Reg. 810-3-31-.02(15). The taxpayer argues that, under regulation 810-3-31-.02(16), those sales made by it to customers in foreign countries from Alabama shipping points should not be included in the numerator of the sales factor. The Commissioner argues that the proper application of regulation 810-3-31-.02(16) will result in the inclusion of these sales in the numerator of the sales factor.
The pertinent section of regulation 810-3-31-.02(16) provides:
 "(16) Sales of tangible personal property are in this state if:
". . . .
 "(b) the property is shipped from an office, store, warehouse, factory, or other place of storage in this state and (1) the purchaser is the United States government or (2) the taxpayer is not taxable in the state of the purchaser."
The term "state" as used in this regulation includes not only states of the United States but also foreign countries. Reg.810-3-31-.02(1)(h). As a result, sales made by a taxpayer to customers in foreign countries will be included in the numerator of the sales factor if those sales are not taxable in the foreign country where the sale was actually made. In other words, these sales are "thrown back" to Alabama if they are not taxable abroad. *Page 300 
Under regulation 810-3-31-.02(3)(a), a taxpayer is considered "taxable in another state" if either one of two tests is met:
 "1. If by reason of business activity in another state the taxpayer is subject to one of the types of taxes specified in paragraph (3) above, namely: A net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or
 "2. If another state has jurisdiction to subject the taxpayer to a net income tax, regardless of whether or not that state imposes such a tax on the taxpayer."
Neither party argues that the first test is met in the present case. Instead, they agree that application of the jurisdictional test set out in subsection 2 will be determinative of the issue. They, of course, disagree as to the correct result of this application.
This jurisdictional test is explained in regulation810-3-31-.02(3)(c) as follows:
 "The second test in paragraph (3)(a) applies if the taxpayer's business activities are sufficient to give the state jurisdiction to impose a net income tax under the Constitution and statutes of the United States. Jurisdiction to tax is not present where the state is prohibited from imposing the tax by reason of the provisions of Public Law 86-272, 15 U.S.C.A. Sec. 381-385. In the case of any 'state' as defined in paragraph (1)(h) of this regulation, other than a state of the United States or political subdivision of such state, the determination of whether such 'state' has jurisdiction to subject the taxpayer to a net income tax shall be made as though the jurisdictional standards applicable to a state of the United States applied in that 'state.' If jurisdiction is otherwise present, such 'state' is not considered as without jurisdiction by reason of the provisions of a treaty between that state and the United States." (Emphasis supplied.)
The emphasized portion of this regulation presents the crux of the parties' disagreement on the current issue. The commissioner makes two arguments concerning the correct interpretation of this regulation.
First, he argues that this regulation represents an express adoption by the Department of Revenue of Public Law 86-272, 15 U.S.C. § 381-384. He argues that the provisions of P.L. 86-272 are applicable both to sales made by a taxpayer in sister states of the United States and to those sales made in foreign countries. While we accept that the regulation adopts as part of its jurisdictional test those provisions contained in P.L. 86-272, we are of the opinion that P.L. 86-272 is not applicable to sales to foreign countries.
Briefly, P.L. 86-272 prohibits state or local governments from imposing net income taxes on sellers of tangible personal property whose business activities in the state are limited to what may be referred to as the mere "solicitation of orders" for sales. For a more complete summarization of the provisions of P.L. 86-272 see Hartman, "Solicitation" and "Delivery" underPublic Law 86-272: An Uncharted Course, 29 Vand.L.Rev. 353 (1976).
The Commissioner contends that application of P.L. 86-272 to the facts of the present case results in a finding that the taxpayer was not taxable in the foreign countries where its sales were made. Because it is clear to us that P.L. 86-272 does not apply to any sales made in foreign commerce, we do not decide whether the Commissioner is correct in his contention that the taxpayer's business activities in those foreign countries where sales were made would meet the "solicitation" threshold of P.L. 86-272.
Public Law 86-272 was passed with the intent of reducing what Congress thought to be an undue burden on the free flow of interstate commerce, i.e., the imposition of state net income tax on income derived through those business activities mentioned in P.L. 86-272. See 1959 U.S. Code Cong. Ad. News 2547, 2549-52. See also Heublein, Inc. v. South Carolina TaxCommission, 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972). Nothing in either its language or its legislative history indicates *Page 301 
any attempt by Congress to regulate another country's taxing power. As a practical matter, even if such an intent existed, we do not believe Congress has the power to directly regulate another country's taxing power. We note that the only other state appellate court that has had the opportunity to address the issue similarly decided that P.L. 86-272 has no bearing on the taxing power of a foreign country. See Scott Williams,Inc. v. Board of Taxation, 117 N.H. 189, 372 A.2d 1305 (1977).
In his second argument concerning P.L. 86-272, the Commissioner goes a step further by contending that even if P.L. 86-272 has no effect on the taxing power of a foreign country, the regulation passed by the Department of Revenue does. He argues that regulation 810-3-31-.02(3)(c) simply adopted the solicitation provisions of P.L. 86-272 as its own test for determining the taxing jurisdiction of a foreign country.
This argument, while intriguing, is not supported by the language of Regulation 810-3-31.02(3)(c). The regulation merely provides that "Jurisdiction to tax is not present where the state is prohibited from imposing the tax by reason of the provisions of Public Law 86-272." We have already determined that P.L. 86-272 does not prohibit a foreign country from exercising its power to tax. We must, therefore, reject this argued construction of regulation 810-3-31-.02(3)(c). We therefore do not consider the possible invalidity of such a regulation.
We conclude that, as stated in the latter part of Regulation810-3-31-.02(3)(c), the taxing jurisdiction of a foreign country is measured by the same due process standards that are applicable to a state of the United States. That standard has long required some "definite link, some minimum connection between a state and the person, property or transaction" sought to be taxed. Miller Bros. Co. v. State, 347 U.S. 340,74 S.Ct. 535, 98 L.Ed.2d 744 (1954). See Scripto, Inc. v. Carson,362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960). There must also be a rational relationship between the income attributed to the state and the intrastate values of the enterprise. Mobil OilCorp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223,63 L.Ed.2d 510 (1980). As the United States Supreme Court has stated, "[T]he simple but controlling question is whether the state has given anything for which it can ask return."Wisconsin v. J.C. Penney Co., 311 U.S. 435, 61 S.Ct. 246,85 L.Ed. 267 (1940). See National Bellas Hess, Inc. v. Departmentof Revenue, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505
(1967). We note that in their application, a sufficient nexus or connection under these principles has been found even when the business activities of the taxpayer have been somewhat minimal. See, e.g., Northwestern States Portland Cement Co. v.Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959) (nexus found when taxpayer's only connection to state was employment of four salesmen who maintained a "regular and systematic course of solicitation" of orders for taxpayer's cement).
In applying these same principles to the stipulated facts of the present case, we find that we are unable to determine whether there was a sufficient nexus between the taxpayer and those foreign countries where sales were made to bring it within the taxing jurisdiction of those countries. We are not convinced that any time a taxpayer makes a sale to a customer in a foreign country from an Alabama shipping point he subjects himself to the taxing jurisdiction of that country. Instead, the principles discussed earlier suggest to us that whether one is subject to the taxing jurisdiction of a state or foreign country is dependent upon the degree to which he has business activities in that state or country. We cannot determine, from the stipulated facts, to what degree the taxpayer has had business activities in the foreign countries it asserts have taxing jurisdiction over it.
The burden of proving that he is subject to the taxing jurisdiction of another state or country is on the taxpayer.See State v. Weil, 232 Ala. 578, 168 So. 679 (1936) (citingShaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445
(1920)). See generally 85 C.J.S. Taxation § 1105 C(3)(b)(1954). This is necessary because it is the taxpayer, not *Page 302 
the department of revenue, that is in the best position to determine the extent and nature of its business activity in other states or countries. See Scott Williams, Inc., supra;Johns-Manville Products Corporation v. Commissioner of RevenueAdministration, 115 N.H. 428, 343 A.2d 221 (1975), dismissedfor want of substantial federal question, 423 U.S. 1069,96 S.Ct. 851, 47 L.Ed.2d 79 (1976). Because the taxpayer has not met this burden in the present case, we must reverse on this issue.
The only stipulated facts relevant to the third issue are as follows:
 "9. In its original return, the taxpayer included Internal Revenue Code § 78 gross up income as well as Internal Revenue Code § 951 Subpart F income in net income from business done without the State of Alabama."
As explained by the supreme court in State v.Chesebrough-Ponds, Inc., 441 So.2d 598 (Ala. 1983), §40-18-35(3), Code of Alabama 1975, "allows a corporation to deduct on its Alabama income tax return a percentage, computed by a statutory formula (apportionment ratio), of its federal income tax liability. The percentage deduction allowed a foreign corporation is "the ratio that the net income . . . of the corporation on business done within Alabama bears to its net income . . . from business done within and without the State of Alabama." This percentage may be stated as the following fraction:
 net income from business done in Alabama --------------------------------- net income from business done both within and without the state of Alabama
See Regulation 810-3-35-.02(1)(d).
It is the taxpayer's position that the denominator of this fraction does not include either what is referred to as § 78 "gross up income" or § 951 "Subpart F income." The commissioner takes the position that both must be included in the denominator. The circuit court accepted the taxpayer's position and held that both "gross up income" and "Subpart F income" are "fictitious income" and should not be included in the denominator of the above fraction.
The supreme court has defined "net income from business done both within and without Alabama" (as used in the denominator of this fraction) as being one and the same with "gross income, as set out in § 40-18-14, from whatever source both within and without the state." Chesebrough-Ponds, Inc., supra. Given this definition, our issue becomes whether or not "gross up income" and "Subpart F income" are within the definition of "gross income" as set out in § 40-18-14, Code 1975. To make this determination, we must first explore the nature of both "gross up income" and "Subpart F income."
What the parties refer to as "gross up income" is given meaning by I.R.C. § 78. This "gross up" represents one step a qualified domestic corporation with foreign subsidiaries must take in calculating its federal income taxes in order to take advantage of the provisions of I.R.C. § 902.
A corporation may either deduct income tax paid to a foreign country under I.R.C. § 164 or credit that amount under I.R.C. § 901 against its federal tax liability. This may be referred to as a "direct foreign tax credit." See B. Bittker J. Eustice,Federal Income Taxation of Corporations and Shareholders ¶ 17.10 (1979) (hereinafter cited as Bittker Eustice).
While § 901 provides a credit for foreign taxes actually paid, § 902 goes a step further and allows the domestic corporate shareholder a derivative credit for the foreign income taxes paid by its foreign subsidiaries on their accumulated profits, in the year in which the domestic corporation receives a dividend from the foreign corporation.See Bittker Eustice ¶ 17.11. In effect, the domestic corporation is "deemed to have paid" the foreign tax through a reduction in the foreign income available for repatriation in the form of dividends. Id.
As noted in Bittker Eustice, "only foreign taxes attributable to the foreign corporation's 'net' earnings available for distribution of dividends to its shareholders could be claimed as a credit under § 902; taxes attributable to earnings used to pay *Page 303 
the foreign taxes themselves could not be credited under § 902, because these earnings were not subjected to the double taxation which Congress sought to avoid by § 902." Id. (citingAmerican Chicle Co. v. United States, 316 U.S. 450,62 S.Ct. 1144, 86 L.Ed. 1591 (1942).
This rule allowed for an unnecessary preference for the use of foreign subsidiaries as opposed to branches. When a subsidiary was used, these foreign taxes would serve a dual function as both a deduction in determining the amount of the foreign corporation's dividends taxable to the domestic parent and a credit against the domestic corporation's U.S. taxes on that dividend. Bittker Eustice ¶ 17.11.
In an attempt to equalize the tax burden on the use of subsidiaries and branches, Congress passed I.R.C. § 78. As explained in Bittker Eustice ¶ 17.11, § 78 requires:
 "the domestic corporate shareholder to 'gross up' the foreign taxes that are creditable under § 902, i.e., to treat them as a constructive dividend for purposes of computing its tax under § 61 on the dividend income received from the foreign corporation. Under this gross-up approach, the domestic corporate shareholder first computes its deemed-paid foreign tax credit under § 902(a)(1) without the American Chicle limitation, and then includes this amount in its gross income as a 'dividend' under § 78."
It should be noted, that these § 78 "dividends" constitute "gross income" under the I.R.C. for all purposes, not merely for the computation of the shareholder's foreign tax credits.See I.R.C. §§ 78, 61; Bittker Eustice ¶ 17.11 n. 85.
For a number of reasons, we cannot escape the conclusion that this "gross up income" must also be treated as "gross income" under § 40-18-14, Code 1975. Therefore, this "gross up income" must be included in the denominator of the formula at issue.
First, we note that § 40-18-14 expressly includes as gross income those "gains, profits and income derived from . . . dividends." While "dividends" is not expressly defined by this section, the section was copied in large part from the federal statute, I.R.C. § 61. As such, the fact that "gross up income" is a "dividend" under the federal statute may be given some weight by this court. See State v. Gulf Oil Corp., 47 Ala. App. 434, 256 So.2d 172 (1971); Alabama Department of Revenue Regulation 810-3-14-.01(8).
Second, even if this "gross up" income were not a "dividend" under § 40-18-14(1), it would be included as "gross income" under the catch-all phrase "income derived from any source whatever." See § 40-18-14(1). See also Regulation810-3-14-.10(1) (defining gross income as "all wealth flowing to the taxpayer from whatever source"). There can be no argument that the domestic corporation required to compute "gross up income" has not received some economic benefit from its election to take the § 902 credit. As we have already discussed, it was this very economic preference for foreign subsidiaries that prompted Congress to pass § 78.
Third, at least one other state appellate court has addressed a similar issue concerning I.R.C. § 78. In a splendidly explained opinion, that court held similarly that § 78 "gross up income" may constitute gross income under that state's tax laws. See Dow Chemical Co. v. Commissioner of Revenue,378 Mass. 254, 391 N.E.2d 253 (1979).
Taxpayer argues in brief that including this "gross up income" in the denominator of the ratio at issue is precluded because the United States Supreme Court has characterized this as "fictitious income." See F.W. Woolworth Co. v. Taxation andRevenue Department of New Mexico, 458 U.S. 354, 102 S.Ct. 3128,73 L.Ed.2d 819 (1982). Our reading of F.W. Woolworth Co. does not lead to such a conclusion.
In F.W. Woolworth Co., it was the Supreme Court of New Mexico that characterized the "gross up income" as "fictitious," not the United States Supreme Court. The Supreme Court did not hold that such income could never be taxed, but only that a state could not tax it if the domestic corporation's "foreign subsidiaries . . . had no unitary business relationship with" that state. F.W. Woolworth Co., 458 U.S. 372-73,102 S.Ct. at 3139. Finally, there has *Page 304 
been no attempt made in the present case to impose an income tax on this "gross up income" as was the case in F.W. WoolworthCo. The Commissioner is only attempting to include this income in the denominator of the federal income tax apportionment formula in order to determine the fair percentage of the taxpayer's federal income tax paid that may be deducted from its Alabama income tax.
Admitting that the State of Alabama is not attempting to tax either its "gross up income" or its "Subpart F income," the taxpayer argues that these items should not be included as "gross income" under § 40-18-14(1) because of this very reason. This argument must also fail. Our supreme court has stated that such items are not removed from the Alabama definition of net income just because they are not taxable in Alabama.Chesebrough-Ponds, Inc., supra. Section 40-18-14 "includes in gross income 'all income derived from any source whatever . . . and against which income there is no provision for tax.' " Id.
Turning specifically to what the parties refer to as § 951 "Subpart F income," we find that a complete discussion of that topic is complex and unnecessary to this opinion. Treatment of "Subpart F income" or "earned" income as gross income has been upheld as lawful by the federal courts. See Estate of Whitlockv. Commissioner, 494 F.2d 1297 (10th Cir.), cert. denied,419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).
Similar to the legislative purpose behind § 78, the Subpart F provisions were passed to eliminate an unnecessary "tax haven" that had been given to those corporations that used foreign subsidiaries instead of branches. Bittker Eustice ¶ 17.30. Prior to enactment of these provisions, the income of a foreign corporation controlled by an American corporation was not subject to taxation in the United States until it was repatriated in the form of dividends. Id. Thus, payment of the domestic taxes on such income could be deferred until the shareholders controlling the subsidiaries found it expedient.Id.
For the same analytical reasons given in our discussion of § 78 "gross up income" as "gross income" under § 40-18-14(1), we must conclude that § 951 "Subpart F income" is also "gross income" as encompassed by the definition given in §40-18-14(1). Such income is due to be included in the denominator of the federal tax deduction ratio.
"Subpart F income" is considered as "gross income" under I.R.C. § 61. If this increase in the wealth of the taxpayer were not included in the determination of its gross income in the same taxable year as it is considered so under the I.R.C., it might not ever find inclusion into the state tax system. When this income is finally "paid out" to the domestic corporation, it is not included as gross income under I.R.C. § 61. See I.R.C. § 959; Bittker Eustice ¶ 17.31. It seems logical to us, that this increase in wealth must at some point be included in the taxpayer's gross income. The best and fairest way to ensure this is to have both the state and federal systems recognize this increase of wealth in the same taxable year.
We are of the opinion that the circuit court has erred to reversal on all three of the issues reviewed. This cause is remanded to the circuit court so that a judgment may be entered in favor of the Commissioner of Revenue on all issues.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.