THOMPSON, Presiding Judge.
The State Department of Revenue ("the department") and Vernon Barnett, in his official capacity as the commissioner of the department, appeal from a judgment of the Montgomery Circuit Court. The circuit court's judgment upheld a decision of the department's administrative-law judge ("the ALJ") regarding an income-tax refund that Coca-Cola Refreshments, U.S.A., Inc., formerly known as Coca-Cola Enterprises, Inc. ("CCE"), and two of its subsidiaries, Roddy Coca-Cola Bottling Company, Inc. ("Roddy"), and Vending Holding Company ("VHC"), had sought from the department. (CCE, Roddy, and VHC are hereinafter referred to collectively as "the taxpayers.")
The facts in this matter are not disputed. CCE, a Delaware corporation, did business in Alabama at all times relevant to this appeal. Roddy, a Tennessee corporation, operated a soft-drink bottling and distribution facility in Montgomery. In November 1998, Roddy became an indirect wholly owned subsidiary of CCE. VHC, a Georgia corporation, also did business in Alabama at all times relevant to this appeal. VHC has been a wholly owned subsidiary of CCE since CCE acquired it in 1992.
All three entities-CCE, Roddy, and VHC-were required to file corporate tax returns and pay corporate income taxes in Alabama. As the ALJ explained in his decision, before the 1999 tax year, § 40-18-39, Ala. Code 1975, required all corporations subject to Alabama income tax to file separate-entity returns. However, in 1998, the Alabama Legislature amended that statute by enacting Act No. 98-502, Ala. Acts 1998 ("the 1998 Act"). Pursuant to the 1998 Act, for the first time, a group of affiliated corporations in Alabama could elect to file a consolidated Alabama tax return if that group also filed a consolidated federal tax return, provided that at least one member of the group was subject to Alabama corporate taxes. § 40-18-39(c)(1). Such a group of corporations is known as an Alabama affiliated group ("AAG"). At that time, by definition, an AAG included all members of its federal consolidated group. Under the 1998 Act, an AAG that elected to file a consolidated return was to be treated as though it was a single taxpayer for the purpose of determining the AAG's taxable income or losses. § 40-18-39(c)(3). As the ALJ stated, "the deductions and losses, including [net operating loss] carryovers, attributable to one group member could be applied to offset the income of the other group members in computing the group's net taxable income or loss."
Section 40-18-39 was amended again by Act No. 2001-1089, Ala. Acts 2001 ("the 2001 Act"). The amendment became effective beginning with the 2002 tax year. Under the 2001 Act, the definition of an AAG was modified to limit the members of the group to only those members of a federal consolidated group that had a nexus with and were subject to Alabama's corporate income tax. § 40-18-39(b)(1). In addition, under the 2001 Act, the AAG was no longer to be treated as a single taxpayer; each member of an AAG that elects to file a *20 consolidated return now must compute its Alabama taxable income or loss separately. § 40-18-39(c)(5). The 2001 Act also limited the allocation of net operating loss ("NOL") in a consolidated return as follows:
"(h) If, in a taxable year before the corporation became a member of an Alabama affiliated group that has elected to file an Alabama consolidated return, the corporation incurred a net operating loss, the deductibility of the loss on the Alabama consolidated return shall be limited to only the amount necessary to reduce to zero the Alabama taxable income, calculated on a separate return basis, of the corporation that incurred the net operating loss. Except as provided in the preceding sentence, the separate return limitation year ('SRLY') rules contained in 26 U.S.C. § 1502 shall apply."
§ 40-18-39(h).
The taxpayers each filed separate corporate income-tax returns in years they were required to file Alabama returns until 2007. On its returns for calendar years 1992 through 2002 and calendar year 2004, CCE reported total Alabama NOLs of $10,249,031. CCE was permitted to carry forward its NOLs and deduct them in later years. Although CCE and VHC were members of an affiliated group and filed federal consolidated tax returns for calendar years 1992 through 2007, and although Roddy was included in that federal affiliated group from 1998 through 2007, the taxpayers elected to file an Alabama consolidated corporate income-tax return for the first time in 2007.
As required by § 40-18-39(c)(5), the taxpayers prepared and submitted separate "pro forma" returns to submit with their 2007 Alabama consolidated return. On their individual forms, CCE reported a 2007 Alabama taxable loss in the amount of $989,933; VHC reported a 2007 Alabama taxable loss in the amount of $37,342; and Roddy reported 2007 Alabama taxable income in the amount of $11,371,206. On their consolidated return, the taxpayers reported their aggregate taxable income as $10,343,871.[1] They then deducted CCE's Alabama NOL of $10,249,031, which it had carried forward from previous years, for a consolidated taxable income in the amount of $94,840. Because of certain credits and tax payments that had already been made, the taxpayers, on their 2007 consolidated return, requested a refund of Alabama corporate income tax in the amount of $978,934.
The department reviewed the taxpayers' 2007 Alabama consolidated return. In an adjustment notice dated April 16, 2009, the department disallowed the entire NOL deduction on the ground that "[t]here are no consolidated net operating losses to be utilized by the Alabama Affiliated Group as 12/31/2007 is the first tax year that the taxpayer has filed an Alabama consolidated return." After disallowing the NOL deduction, the department recalculated the refund due the taxpayers. Based on its calculation, the department issued the taxpayers a 2007 refund in the amount of $318,882.37.
On June 26, 2009, the taxpayers appealed the department's adjustment based on the disallowance of the NOL to the department's administrative-law division.[2] The *21 ALJ analyzed the words and terms used in the applicable statutes governing the filing of an Alabama consolidated return and determined that the NOLs for 1992 through 1998 could not be used on the AAG's 2007 consolidated return because, he found, CCE had negative taxable income "in that year." However, the ALJ ruled that the NOLs from 1999 through 2002 and 2004 could be allowed as group NOLs on the 2007 consolidated return because CCE was a member of an AAG in those loss years.
Both the taxpayers and the department and one of Barnett's predecessors as commissioner of the department appealed to the circuit court from the ALJ's decision. The taxpayers initially challenged the ALJ's determination that the NOLs incurred by CCE in the separate filing years 1992 through 1998 could not be deducted on the 2007 Alabama consolidated return. The department and its commissioner challenged the ALJ's determination that the taxpayers were entitled to deduct the NOLs from 1999 through 2002 and 2004 on the 2007 Alabama consolidated return.
The circuit court referred the matter to a special master. After considering the record from the proceedings before the administrative-law division and the briefs and arguments of the parties, the special master submitted his findings of fact and conclusions of law to the circuit court on February 17, 2016. The special master, like the ALJ, analyzed the relevant statutes and reached the same conclusions as the ALJ. The special master determined that
" § 40-18-39 must be construed as allowing Alabama affiliated group members to share NOL carryovers on an Alabama consolidated return, but only if the § 40-18-39(h) limitation does not apply. The subsection (h) limitation applies if an NOL was incurred by a group member in a year before the member became a member of the Alabama affiliated group. Because an Alabama affiliated group did not exist before 1999, all NOLs incurred before 1999 are subject to the subsection (h) limitation. If, however, the loss was incurred in 1999 or later, and the corporation that incurred the loss was a group member in the loss year, the subsection (h) limitation does not apply, even if the Alabama affiliated group did not file an Alabama consolidated return in the loss year.
"In conclusion, the Court holds [that] CCE, Roddy, and VHC were all members of an 'Alabama affiliated group' for the years 1999 through 2007 and are entitled to file a consolidated return in 2007. Further, they are entitled to report the Alabama Net Operating Losses for the years 1999 through 2002 and 2004."
The special master recommended that the department recompute the amount the taxpayers were due as a tax refund based on his conclusions.
The taxpayers dropped their challenge regarding the decision that they could not claim NOLs before 1999 and urged the circuit court to adopt the special master's report in full. The department and its commissioner continued their challenge to the decision that the taxpayers could report the NOLs from 1999 to 2002 and 2004 on the 2007 Alabama consolidated return. On February 20, 2017, the circuit court entered a judgment adopting the special master's report in full. The department and Barnett filed a timely notice of appeal to this court.
*22 The issues presented on appeal were well argued by the parties in their respective briefs. The key issue on appeal is whether the limitation on the use of NOLs set forth in § 40-18-39(h), that is,
"[i]f, in a taxable year before the corporation became a member of an Alabama affiliated group that has elected to file an Alabama consolidated return, the corporation incurred a net operating loss, the deductibility of the loss on the Alabama consolidated return shall be limited to only the amount necessary to reduce to zero the Alabama taxable income, calculated on a separate return basis, of the corporation that incurred the net operating loss,"
applies in this case. For reasons explained more fully later in this opinion, the department and Barnett argue that it does apply, therefore precluding the taxpayers from reporting on their 2007 Alabama consolidated return the NOLs that CCE had incurred from 1999 through 2002 and in 2004 and that CCE was attempting to carry forward.
"Our standard of review is de novo: 'Because the issues presented by [this appeal] concern only questions of law involving statutory construction, the standard of review is de novo. See Taylor v. Cox, 710 So.2d 406 (Ala. 1998).' Whitehurst v. Baker, 959 So.2d 69, 70 (Ala. 2006)." Ex parte Birmingham Bd. of Educ., 45 So.3d 764, 767 (Ala. 2009) ; see also Page v. Southern Care, Inc., 219 So.3d 660, 664 (Ala. Civ. App. 2016) ("The construction of a statute ... involves a question of law that this court reviews de novo without a presumption of correctness.").
In the context of applying the rules of statutory construction in a tax matter, this court has written:
" 'Certain rules of statutory construction will guide us in deciding this case:
" ' "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985) ; League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra ; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala. 1978). If the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 356 So.2d 139 (Ala. 1978) ; League of Women Voters v. Renfro, supra."
" ' Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala. 1987). In deciding between alternative meanings to be given to an ambiguous or uncertain statutory provision, we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, see State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (1953) ; Crowley v. Bass, 445 So.2d 902 (Ala. 1984) (dictum); 2A N. Singer, Sutherland Statutory Construction § 45.12 (Sands 4th ed. 1984), one that advances the legislative purpose in adopting the legislation, see Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754 (Ala. 1978), that is "workable and fair," State v. Calumet & Hecla Consol. Copper Co., supra ; Ex parte Hayes, 405 So.2d 366 (Ala. 1981), and *23 that is consistent with related statutory provisions, see Tate v. Teague, 431 So.2d 1222 (Ala. 1983) (" 'The intention of the Legislature may be determined by examining the statute as a whole' ") (quoting and adopting the trial court's conclusions of law).'
" John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala. 1988). We note 'the long-standing axiom that, where the language of a taxing statute is reasonably capable of two constructions, the most favorable to the taxpayer must be adopted.' Norandal USA, Inc. v. State Dep't of Revenue, 545 So.2d 792, 793 (Ala. Civ. App. 1989)."
Alabama Dep't of Revenue v. American Equity Inv. Life Ins. Co., 169 So.3d 1069, 1071-72 (Ala. Civ. App. 2015).
However, the department and Barnett cite Ex parte Kimberly-Clark Corp., 503 So.2d 304, 306 (Ala. 1987), for the proposition that,
" 'when interpreting a taxation statute, exemptions and deductions must be strictly construed against a taxpayer and in favor of the taxing authority. State v. Hunt Oil Company, 49 Ala.App. 445, 273 So.2d 207, cert. denied [290 Ala. 371], 273 So.2d 214 (Ala. 1972) ; State v. Zewen, 270 Ala. 52, 116 So.2d 373 (1959).' "
(Quoting White v. Kimberly-Clarke Corp., 503 So.2d 296, 298 (Ala. Civ. App. 1986).) Because the ultimate issue is whether the AAG is entitled to deduct NOLs incurred before an Alabama consolidated return had been filed, we conclude that, under the circumstances of this case, § 40-18-39(h), the statute that places a limitation on the NOL deduction, must be construed in favor of the department. Furthermore,
" '[i]t is well established that in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if that interpretation is reasonable. Ex parte State Dep't of Revenue, [683 So.2d 980 (Ala. 1996) ] (citing Alabama Metallurgical Corp. v. Alabama Pub. Serv. Comm'n, 441 So.2d 565 (Ala. 1983) ). Absent a compelling reason not to do so, a court will give great weight to an agency's interpretations of a statute and will consider them persuasive. Ex parte State Dep't of Revenue, supra (citing Moody v. Ingram, 361 So.2d 513 (Ala. 1978) ).'
" State v. Pettaway, 794 So.2d 1153, 1157 (Ala. Civ. App. 2001). However, as established above, when the Department's interpretation conflicts with the applicable statute, the Department's regulation cannot stand."
Alabama Dep't of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 866 (Ala. Civ. App. 2008). Moreover,
"[a]lthough the interpretation of a statute by an administrative agency that is charged with enforcement of the statute is persuasive, Alabama Dep't of Revenue v. Jim Beam Brands Co., 11 So.3d 858, 866 (Ala. Civ. App. 2008), that interpretation is not binding on this court. Britnell v. Alabama State Bd. of Educ., 386 So.2d 1148, 1149 (Ala. Civ. App. 1980)."
State Dep't of Revenue v. Omni Studio, LLC, So.3d 367, 375 (Ala. Civ. App. 2016).
The department and Barnett contend that, since the enactment of the 2001 Act, an NOL incurred during years in which a corporation filed a separate return cannot be used to create a loss that can be reported on an Alabama consolidated return and shared by members of the AAG. They also argue that, by definition, an AAG cannot exist until a consolidated return is filed. Therefore, they reason, any NOLs incurred *24 and reported in a separate return, that is, before the AAG elected to file an Alabama consolidated return, cannot be used as a deduction that is carried forward for use by all the members of the AAG. Instead, the department and Barnett assert, § 40-18-39(h) limits the deductibility of such an NOL to "only the amount necessary to reduce to zero the Alabama taxable income, calculated on a separate return basis, of the corporation that incurred the net operating loss." Accordingly, the department and Barnett contend that CCE did not become a member of an AAG until 2007, the first year in which the AAG elected to file an Alabama consolidated return, and that, therefore, the NOLs CCE incurred in the years 1999 through 2002 and 2004 can be used only to reduce CCE's own Alabama corporate income to zero. The NOL deduction cannot be taken by other members of the AAG on the 2007 consolidated return, according to the department and Barnett.
The department and Barnett contend that an AAG cannot exist until it files an Alabama consolidated return. An "Alabama affiliated group" is defined in § 40-18-39(b)(1) as
"a group of corporations, each member of which is subject to tax under Section 40-18-31[,Ala. Code 1975,] and Public Law 86-272 ( 15 U.S.C. §§ 381 - 384 ), which are members of an affiliated group as defined in 26 U.S.C. § 1504 and which affiliated group files a federal consolidated corporate income tax return, each member of which:
"a. Has the same taxable year;
"b. Is a member of the group for the entire taxable year or was a member of the group for a portion of the taxable year if the member was subject to Section 40-18-31 during the entire portion of the taxable year during which it was not a member of the federal consolidated group;
"c. Apportions Alabama taxable income or loss separately for each corporation;
"d. Allocates taxable income or loss separately for each corporation in accordance with Section 40-27-1, Article IV[, Ala. Code 1975];
"e. Computes apportionable income or loss utilizing separate apportionment factors for each corporation in accordance with Section 40-27-1, Article IV; and
"f. Combines and reports taxable income or loss computed in accordance with paragraphs c through e of this subsection on a single return for the Alabama affiliated group;
"and which includes all members of the affiliated group included on the federal consolidated income tax return that are eligible under this section to be included in the Alabama affiliated group ...."
The department and Barnett assert that, among other prerequisites that the 2001 Act added for the formation of an AAG, subsection f. requires that a group of corporations now must "[c]ombine[ ] and report[ ] taxable income or loss computed in accordance with paragraphs c through e of this subsection on a single return for the Alabama affiliated group" to meet the definition of an AAG. Until the AAG elects to file its first Alabama consolidated return, the department and Barnett say, no AAG exists.
The ALJ, the special master, and the circuit court all rejected the department and Barnett's interpretation. We first note that
" '[i]t is well established that " '[s]ections of the Code dealing with the same subject matter are in pari mate ria *25 . As a general rule, such statutes should be construed together to ascertain the meaning and intent of each.' " New Joy Young Restaurant, Inc. v. State Dep't of Revenue, 667 So.2d 1384 (Ala. Civ. App. 1995) (quoting Locke v. Wheat, 350 So.2d 451, 453 (Ala. 1977) ). Finally, "[this court] recognize[s] that a statute should be construed, if possible, to give effect to every section thereof, and that the legislature should not be deemed to have done a vain and useless thing." State of Alabama Home Builders Licensure Bd. v. Sowell, 699 So.2d 214 (Ala. Civ. App. 1997).'
" State v. Amerada Hess Corp., 788 So.2d 179, 183-84 (Ala. Civ. App. 2000)."
Shoals Mill Dev., Ltd. v. Shelby Cty. Bd. of Equalization, 238 So.3d 1253, 1255 (Ala. Civ. App. 2017).
In his report, the special master noted that § 40-18-39(b)(1), defining an AAG, "does not set as a condition or requirement that an 'election must first be filed' " before an AAG comes into existence. He also reviewed other statutes and concluded:
"The Court interprets this 'election' to be the election to actually file the return. ... Additionally, in the Code of Alabama § 40-18-39(b)(2) and (c), the language of the sections assumes that an 'Alabama affiliated group' is making the elections. Therefore, if an 'Alabama affiliated group' is making the 'election' it follows that the 'Alabama affiliated group' must exist prior to making the 'election.' "
Section 40-18-39(b)(2) defines an "Alabama consolidated return" as "an Alabama corporation income tax return filed by or on behalf of the members of an Alabama affiliated group in accordance with this section, pursuant to an election made under subsection (c) below." (Emphasis added.) Additionally, § 40-18-39(c)(1) provides that an AAG "filing or required to file a federal consolidated income tax return may elect to file an Alabama consolidated return for the same taxable year. However, under no circumstances may the Department of Revenue compel a taxpayer to file an Alabama consolidated return if the taxpayer has not so elected." Section 40-18-39(c)(8) provides, in pertinent part, that "[a]n Alabama affiliated group that has made an Alabama consolidated return election ... shall be assessed an annual fee for the privilege of filing an Alabama consolidated return." As the taxpayers and the forums that have previously heard this matter determined, if the filing of an Alabama consolidated return was required before a group of corporations could be considered an AAG, then the field of operation of those provisions would be unduly limited.
We agree with the circuit court's conclusion that § 40-18-39(b)(1) f., which states that an AAG "[c]ombines and reports taxable income or loss computed in accordance with paragraphs c through e of this subsection on a single return for the Alabama affiliated group," does not state a prerequisite to the formation of an AAG. Instead, we conclude subsection (b)(1)f. describes how an AAG is to prepare an Alabama consolidated return and does not govern the determination whether an AAG exists.
The department and Barnett also contend that § 40-18-39(h) prohibits the members of an AAG from sharing NOLs on an Alabama consolidated return if those NOLs were not first reported on a consolidated return, that is, if a NOL was first reported in a separate-entity return, it cannot subsequently be used as a NOL reported in an Alabama consolidated filing. Again, each of the forums that have considered *26 this matter have rejected the department and Barnett's argument.
In support of their contention that an AAG cannot apply a NOL if the group did not file an Alabama consolidated return in the year the loss was incurred, the department and Barnett cite § 40-18-39(h), which currently provides
"[i]f, in a taxable year before the corporation became a member of an Alabama affiliated group that has elected to file an Alabama consolidated return, the corporation incurred a net operating loss, the deductibility of the loss on the Alabama consolidated return shall be limited to only the amount necessary to reduce to zero the Alabama taxable income, calculated on a separate return basis, of the corporation that incurred the net operating loss. Except as provided in the preceding sentence, the separate return limitation year ('SRLY') rules contained in 26 U.S.C. § 1502 shall apply."
(Emphasis added.) As the ALJ explained in his decision allowing the taxpayers to apply the NOLs at issue in the 2007 Alabama consolidated return, the federal separate return limitation year ("SRLY") rules
"limit a federal consolidated group's use of a group member's prior NOLs under certain circumstances. Specifically, the SRLY rules provide that an NOL incurred by a group member in a separate return limitation year, i.e., a year before the corporation that incurred the loss became a group member, can only be used on a consolidated return to reduce the loss corporation's income to zero. The balance of the NOL, if any, cannot be applied to reduce the current year income of the other group members."
The department and Barnett's contention is that the limitation codified in § 40-18-39(h) prevents any loss sustained by a corporation before its AAG has elected to file an Alabama consolidated return from being shared by the other members of the AAG. The department and Barnett argue that the phrase "that has elected to file an Alabama consolidated return" refers to a consolidated return filed in the year the loss was incurred. Therefore, the department and Barnett reason, CCE's NOLs incurred before the taxpayers elected to file their first Alabama consolidated return in 2007 cannot be applied to reduce the taxable incomes of the other entities in the AAG's 2007 Alabama consolidated return.
Even giving deference to the department and Barnett's reading of § 40-18-39(h), we cannot agree that that statute precludes members of the AAG from sharing CCE's NOLs on the 2007 return. Instead, we agree with the reasoning set forth in the special master's report, which the circuit court adopted and which was shared by the ALJ, stating:
"This Court agrees with the ALJ that the phrase 'that has elected to file an Alabama consolidated return' must be referring to the current year consolidated return on which the NOL is claimed, and not the return for the prior loss year. The Legislature's use of the word 'has' is key. When § 40-18-39(h) refers to 'an Alabama affiliated group that has elected to file an Alabama consolidated return,' it must be referring to the present or current year filing of such a return. The Department's argument would be correct only if the Legislature had used the past tense 'had' instead of 'has.'
" Section 40-18-39(h) further provides that 'the deductibility of the loss on the Alabama consolidated return shall be limited ...'. By using the phrase 'the Alabama consolidated return,' the Legislature was referring to a specific return, which must be the previously referenced *27 Alabama consolidated return which the affiliated group 'has elected to file,' i.e., the current year consolidated return on which the group claimed the NOL carryover.
"Act 2001-1089 did not change the first part of § 40-18-39(h), as originally enacted by Act 98-502. 'If, in a taxable year before the corporation became a member of an Alabama affiliated group that has elected to file an Alabama consolidated return, the corporation incurred a net operating loss, the deductibility of the loss on the Alabama consolidated return shall be limited.'
"The above language identifies the NOLs that are subject to the limitation, i.e., those NOLs incurred by a group member in a year before the loss corporation became a member of the group. The limitation does not apply if the corporation that incurred the loss was a group member in the loss year, even if the group did not file an Alabama consolidated return in the loss year."
Moreover, § 40-18-39(c)(8) affords benefits to AAGs who have paid a scheduled fee "for the privilege of filing an Alabama consolidated return." It is counterintuitive to think that the legislature intended to assess a fee to grant AAGs "the privilege of filing an Alabama consolidated return" but then not allow them to have the benefits of making such an election. Here, each member of the AAG had been part of the AAG since at least 1999. Therefore, we conclude that the limitation in § 40-18-39(h) did not bar the other members of the AAG from deducting CCE's NOLs from the years 1999 through 2002 and 2004 from the group's income on its 2007 Alabama consolidated return.
The department and Barnett failed to demonstrate that the circuit court erred in upholding the decision of the ALJ allowing CCE, Roddy, and VHC, as members of an AAG, to report CCE's NOLs for the years 1999 through 2002 and 2004 on the taxpayers' 2007 Alabama consolidated return. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Our calculations indicate that the taxpayers had an aggregate taxable income of $10,343,931. However, in this opinion we have set forth the figures that the parties set forth and relied on in making subsequent calculations.

The department and Barnett point out in their appellate brief that the Alabama Legislature abolished the department's administrative-law division and created the Alabama Tax Tribunal, an executive-branch agency independent of the department, on October 1, 2014. Act No. 2014-146, Ala. Acts 2014.