116 So.2d 373

**STATE of Alabama**

v.

**E. R. ZEWEN, d/b/a Zewen Marine Supply.**

**1 Div. 713.**

Supreme Court of Alabama.

Dec. 10, 1959.

John Patterson, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., for appellant.

Sydney S. Pfleger, Mobile, for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by the State of Alabama from a decree of the Circuit Court of Mobile County, Alabama, in Equity, reversing a final assessment for sales tax made by the State Department of Revenue against the

appellee, E. R. Zewen, individually, and doing business as Zewen Marine Supply.

The sole question presented on this appeal is the interpretation of an exemption statute. Sec. 755(r), Title 51, Code of Alabama 1940, as amended by Act No. 211, Acts of Ala.1949, p. 302, in pertinent part, exempts from the sales tax:

"The gross proceeds from the sale or sales of fuel and supplies for use or consumption aboard ships plying on the high seas either in intercoastal trade between ports in the State of Alabama and ports in other states of the United States or its possessions or in foreign commerce between ports in the State of Alabama and ports in foreign countries. * * *"

The facts are not in dispute and are, in substance, as follows:

The appellee during the period covered by the final assessment sold fuel to shrimp and fish boat operators for use in their boats during their shrimping and fishing operations. Admittedly, the boats in which this fuel was used operated on the high seas, that is to say, the boats are stocked at Bayou LaBatre with the necessary supplies, such as equipment, food, water, ice to preserve the shrimp and fish, and fuel to run the motors. They leave Bayou LaBatre, go out into the Gulf of Mexico, make a catch of shrimp and fish, and either return to Bayou LaBatre or go into some other port in Florida, Mississippi or Louisiana. The port to which they return depends on where the catch is made, the best market for the shrimp and fish, and the status of the provisions on board. The evidence shows that on 60 to 70 per cent of the trips leaving Bayou LaBatre, the shrimp and fish catch is returned to Bayou LaBatre and on the remaining trips the catch is taken to ports in Florida, Mississippi and Louisiana. When the catch is taken to the ports other than Bayou LaBatre, the shrimp and fish are sold and the boat is restocked with supplies and fuel, leaves that port for open waters in the gulf, makes a catch and usually comes back to the home port, Bayou LaBatre. The boats do not carry any articles, freight, or commodities for the purpose of sale other than the fish or shrimp that are caught in the open waters of the gulf.

■ No question is involved in this case with respect to fuel sold by appellee for the operation of shrimp boats within the "inland waters" or Mobile or Mobile Bay. Appellee collected and paid the sales tax to the state on the sale of this fuel, as such boats do not operate on the "high seas" and, therefore, clearly do not come within the exemption provided in Sec. 755(r), supra. Nor is there any question in this case with respect to fuel sold by appellee for use or consumption aboard ships plying on the high seas in foreign commerce between ports in the State of Alabama and ports in foreign countries.

Since the sale of the fuel involved in this case was to run boats which did operate on the high seas, the only question presented for decision is whether these boats were, under the facts, engaged in intercoastal trade between ports in the State of Alabama and ports in other states of the United States. If they were, the sale of the fuel by appellee for their operation was exempt from the sales tax under Sec. 755(r), supra. If they were not, the tax was due on such sales and the decree of the lower court is in error and should be reversed.

At the hearing, appellee admitted that tax in the amount of $84.08, plus interest to the date of payment (August 10, 1955) was due. This amounted to $93.75. The amount in dispute is $1,114.17.

The decision in this case depends entirely upon an interpretation of the provisions of Title 51, Sec. 755(r), as amended, supra. To come within the exemption statute, it appears that the ships aboard which the fuel and supplies are used or consumed must be plying on the high seas *in intercoastal trade between ports in the State of Alabama and ports of other states of the United States or its possessions.*

The agreements contained in the record, together with the evidence, show that the ships in which the fuel sold by appellee is used leave Bayou LaBatre with only the necessary equipment, supplies and fuel. They do not leave with any articles of trade to be carried to other ports.

 It is well-known canon of construction that (1) taxation is the rule and exemption the exception, and exemptions ought not to be deduced from language of doubtful import; (2) courts can only learn what the legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing a statute; and (3) the general rule where the language of the statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction. State v. Praetorians, 226 Ala. 259, 146 So. 411; Title Guarantee Loan & Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107; Pullman-Standard Car Mfg. Co. v. State, 253 Ala. 638, 46 So.2d 500; State v. Bay Towing and Dredging Co., 264 Ala. 187, 85 So.2d 890.

It appears that Sec. 755(r), supra, is intended to relieve such ships as are *engaged "in trade" between ports in the State of Alabama and ports in other states of the United States or its possessions,* and that even assuming that the fishing and shrimping ships in question are "plying on the high seas," such ships do not fall within the exemption provided in this section.

As stated above, the evidence is undisputed that no commodities are taken from an Alabama port to another port, and on the return trip, no commodities of trade are brought from a port of another state to a port in Alabama. The shrimp and fish which are taken to ports in other states come from the Gulf of Mexico and not from a port in Alabama, or from a port in another state.

It is clear to us that the boats in question are not engaged in intercoastal trade between ports in the State of Alabama and ports of other states in the United States or its possessions, within the meaning of Sec. 755(r), supra. Therefore, the fuel and commodities involved in this case are subject to the sales tax, and the case is due to be, and is, reversed and remanded.

Reversed and remanded.

SIMPSON and GOODWYN, JJ., concur.

COLEMAN, J., concurs in the results.