[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 515 
Bean Dredging, L.L.C., and Midstream Fuel Services, Inc., appeal from a decision of the Montgomery Circuit Court affirming an order issued by an administrative law judge of the Department of Revenue dismissing their case. Bean and Midstream assert that they are entitled to a refund of $58,863 for State sales taxes paid on fuel and supplies during the period from March 1995 through September 1997.
Bean and Midstream assert that they are entitled to a refund because, they say, Bean's dredges are exempt from sales taxes on fuel and supplies under § 40-23-4(a)(10), Ala. Code 1975. This Court has not previously interpreted § 40-23-4(a)(10), and we must now determine whether the dredges were engaged in interstate commerce and thus entitled to a sales-tax exemption under § 40-23-4(a)(10), Ala. Code 1975. We conclude that dredges working to maintain navigable waterways so that those waterways may be used for commerce are engaged in interstate commerce and thus are eligible for the sales-tax exemption provided by § 40-23-4(a)(10), Ala. Code 1975. We reverse and remand.
 Facts
Bean is headquartered in New Orleans, Louisiana, and Midstream is located in Mobile, Alabama. In its normal course of business, Bean contracts with the United States Army Corps of Engineers ("the Corps") to dredge ports, rivers, and harbors throughout the United States. Bean contracted with the Corps to dredge Mobile Bay and the Mobile River during the audit period in issue (March 1995-December 1997); it assigned two vessels to perform the dredging — the Eagle I and the DaveBlackburn.
Mobile Bay and the Mobile River are federal navigation channels. The federal government appropriates federal money annually for maintenance of the channels so that they will remain available for the flow of commerce. The contract between Bean and the Corps stated that the dredges were to work primarily in Mobile Bay between March 1995 and December 1997 but that Bean could pull the dredges at any time and send them to other dredging projects in the United States, a circumstance that actually occurred during the contract.
The Eagle I is a large self-propelled oceangoing hopper dredge. TheEagle I stored the material dredged from Mobile Bay in its hull and then transported it to various predetermined disposal sites in federal waters two to eight miles offshore. The Dave Blackburn, which was destroyed by fire in 1996, was a stationary hydraulic dredge supported by tugs and barges. It also dredged materials from Mobile Bay; however, instead of storing and transporting the materials it pumped the materials through a pipeline and disposed of them at Gilliard Island in Mobile Bay or beside the Mobile Bay ship channel. Both the Eagle *Page 516 I and the Dave Blackburn were stationed in New Orleans, Louisiana, and their employees receive their orders and were paid from New Orleans.
During the contract and audit period, Bean purchased fuel and supplies from Midstream in Mobile, Alabama. The fuel and supplies were used on both the Eagle I and the Dave Blackburn. Bean paid Alabama sales tax on the fuel and supplies; it is from this payment of sales tax that Bean and Midstream jointly petitioned for a refund.
An administrative law judge with the Department of Revenue denied Bean and Midstream's petition for a refund of the sales taxes and applied the law as outlined in State Department of Revenue v. Orange Beach Marina,Inc., 699 So.2d 1279 (Ala.Civ.App. 1997). The administrative law judge recognized that different types of vessels were involved in Orange BeachMarina, but in denying the petition took notice of the Court of Civil Appeals' holding in that case that to qualify for an exemption the vessels must travel between a port in Alabama and a port in another state or country. While the administrative law judge criticized the Court of Civil Appeals' rationale in Orange Beach Marina as being too narrow, the judge agreed with the ultimate holding denying the exemption. Thus, Bean and Midstream's request for a sales-tax refund was denied. The administrative law judge did not dispute that dredging Mobile Bay constitutes an activity that affects interstate commerce for Commerce Clause purposes but found that the broad standard for determining whether an activity affects interstate commerce cannot be applied to the sales-tax exemption statute, § 40-23-4(a)(10), which must be narrowly construed. The administrative law judge therefore found that the statute, when read narrowly, does not apply to dredges.
The Montgomery Circuit Court affirmed the administrative law judge's decision, which strictly construed the exemption statute in favor of the State and applied the Orange Beach Marina requirement that to qualify for the sales-tax exemption the cargoes must be transported between a port in Alabama and a port in another state or country. Additionally, the circuit court also recognized that Bean's captains could have obtained certificates at the time they purchased the fuel and supplies stating that they were purchasing the fuel and supplies for consumption aboard a vessel engaged in interstate commerce, but they failed to do so. It is from the circuit court's affirmance of the administrative law judge's denial of a sales-tax refund under § 40-23-4(a)(10), Ala. Code 1975, that Bean and Midstream appeal.
 Standard of Review
The circuit court reviews de novo an order of an administrative law judge in the State Department of Revenue; however, the order is presumed prima facie correct and the burden is on the appealing party to show otherwise. § 40-2A-9(g)(2), Ala. Code 1975.
This Court's standard of review is different from that applied by the circuit court in reviewing an administrative law judge's order. When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, this Court sits in judgment of the evidence; there is no presumption of correctness. Old Southern Life Ins. Co. v. Williams,544 So.2d 941, 942 (Ala. 1989); Craig Constr. Co. v. Hendrix,568 So.2d 752, 756 (Ala. 1990). When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. State Dep't of Revenue v. Garner, *Page 517 812 So.2d 380, 382 (Ala.Civ.App. 2001); see also Ex parte Graham,702 So.2d 1215 (Ala. 1997). In this case the trial court based its decision upon the stipulations, briefs, writings, and arguments of the parties' attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the trial court's ruling carries no presumption of correctness.
 Issue and Analysis
The sole issue before this Court is whether Bean's dredges — theEagle I and the Dave Blackburn — were engaged in interstate commerce so that the purchase of the diesel fuel and supplies for the dredges was exempt from Alabama sales tax under § 40-23-4(a)(10), Ala. Code 1975. This is a case of first impression. Therefore, we must apply rules of statutory construction to § 40-23-4(a)(10), Ala. Code 1975, and determine whether the dredges were, for purposes of the statute, "engaged in interstate commerce." We hold that, although the tax-exemption statutes are to be construed against the taxpayer, Bean and Midstream have shown that dredging is substantially related to interstate commerce and that it thus falls within the meaning of "engaged in interstate commerce" intended by the Alabama Legislature.
 I. Statutory Construction
It is this Court's responsibility to give effect to the legislative intent whenever that intent is manifested. State v. Union Tank Car Co.,281 Ala. 246, 248, 201 So.2d 402, 403 (1967). When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Ex parteJackson, 614 So.2d 405, 406-07 (Ala. 1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. Republic Steel Corp. v. Horn, 268 Ala. 279, 281,105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.Ex parte Shelby County Heath Care Auth., 850 So.2d 332 (Ala. 2002).
Additionally, when the highest administrative officials charged with the duty of administering the tax laws have construed a tax statute, their construction should be given favorable consideration. StandardDredging Corp. v State, 271 Ala. 22, 28, 122 So.2d 280, 285 (1960); Statev. Birmingham Rail Locomotive Co., 259 Ala. 443, 448, 66 So.2d 884,889 (1953). While tax-exemption clauses are to be construed most strongly against the taxpayer, they are not to be so strictly construed as to defeat the intent and purpose of the exemption. Union Tank Car Co.,281 Ala. at 248-49, 201 So.2d at 404. The exemption should also be construed against the taxpayer when competing reasonable constructions are offered. Ex parte City of Tuscaloosa, 757 So.2d 1182, 1188 (Ala. 1999). The pertinent portion of the statute at issue provides:
 "(a) There are exempted from the provisions of this division and from the computation of the amount of the tax levied, assessed, or payable under this division the following: . . . .
". . . .
 "(10) The gross proceeds from the sale or sales of fuel and supplies for use or consumption aboard ships, vessels, towing vessels, or barges, or drilling ships, rigs or barges, or seismic or geophysical vessels, or other watercraft . . . *Page 518 
engaged in foreign or international commerce or in interstate commerce. . . .
 "For purposes of this subdivision, it shall be presumed that vessels engaged in the transportation of cargo between ports in the State of Alabama and ports in foreign countries or possessions or territories of the United States or between ports in the State of Alabama and ports in other states are engaged in foreign or international commerce or interstate commerce, as the case may be. For the purposes of this subdivision, the engaging in foreign or international commerce or interstate commerce shall not require that the vessel involved deliver cargo to or receive cargo from a port in the State of Alabama."
§ 40-23-4(a)(10), Ala. Code 1975.
The phrase "interstate commerce" is not defined within the statute. Therefore, we must apply the commonly accepted definition of "interstate commerce" and give it its plain, ordinary, and commonly understood meaning. This Court has recognized that interstate commerce is distinguished from other commerce by the additional phrase "among other states." Miller Transporters, Inc. v. Alabama Public Serv. Comm'n,454 So.2d 1373, 1375 (Ala. 1984). This Court has also stated that the term "interstate commerce" does not "lend itself to a definition simplistically applied in all cases." 454 So.2d at 1375. We have stated:
 "`"Interstate commerce" is not a technical legal conception, but a practical one drawn from the course of business, and what falls within it must be determined upon consideration of established facts and known commercial methods; there is no single concept of interstate commerce which can be applied to every federal [or state] statute regulating commerce.'"
Miller Transporters, 454 So.2d at 1375 (quoting 15A Am. Jur.2d Commerce
§ 4(1976)).
The lower courts have mistakenly assumed that interstate commerce may be proven only by showing that the cargo or persons on the dredges were transported from a port in Alabama to a port in another state or a foreign country. See Orange Beach Marina, supra; but see also State v.Zewen, 270 Ala. 52, 116 So.2d 373 (1959).[1] We find that the circuit court in this case placed undue emphasis upon the word "presumed" and the phrase "transportation of cargo between ports in the State of Alabama and ports in foreign countries. . . ." in the statute and ignored the intent of the Legislature that vessels "engaged in foreign, or international commerce or in interstate commerce" be exempt from sales taxes for fuel and supplies used on board the vessel.
A "presumption" is not evidence or confirmation of a fact; it is "[a] legal inference or assumption that a fact exists"; it merely "shifts the burden of production . . . to the opposing party." Black's LawDictionary 1203 (7th ed. 1999). Therefore, port-to-port activity is but one way to satisfy the requirement that a vessel be "engaged in interstate commerce." The statute even mentions other vessels that may be *Page 519 
"engaged in . . . interstate commerce" without transporting cargo to other states, i.e., "towing vessels, or barges, or drilling ships, rigs or barges, or seismic or geophysical vessels."
As the taxpayers, Bean and Midstream always had the burden of showing that Bean was engaged in interstate commerce and that it was thus exempt from the sales tax on fuel and supplies. Lack of port-to-port activity does not result in a presumption that the vessel is not engaged in interstate commerce, it merely rebuts the presumption in favor of interstate commerce.[2] Therefore, Bean and Midstream had the burden of proving that Bean was engaged in interstate commerce by means other than port-to-port activity.
 II. Dredging and Interstate Commerce
To determine whether dredging falls within the meaning of "engaged in interstate commerce" as intended by § 40-23-4(a)(10), Ala. Code 1975, we must read the statute as a whole, because the meaning of the phrase "engaged in interstate commerce" depends upon the context in which it appears. Ex parte Jackson, 614 So.2d at 406-07. When determining whether a party is engaged in interstate commerce within the context of § 40-23-4(a)(10), we must construe the exemption against the taxpayer and give favorable consideration to the construction of the statute by the highest tax-administration official. Ex parte City of Tuscaloosa, 757 So.2d at 1188; Standard Dredging Corp., 271 Ala. at 28,122 So.2d at 285. Nevertheless, we must not so strictly construe the statute as to defeat the statutory purpose. Union Tank Car Co., 281 Ala. at 248-49,201 So.2d at 404.
To determine whether an activity constitutes interstate commerce this Court must consider the course of business and determine its relation to interstate commerce. Miller Transporters, Inc., 454 So.2d at 1375. Therefore, in this case we must look at the activity of the dredges. InStandard Dredging Corp., this Court "assume[d], without deciding," that Standard's maintenance dredging of Mobile Bay constituted interstate commerce within the meaning of the Commerce Clause. 271 Ala. at 29,122 So.2d at 285. Therefore, this Court did not address whether dredging constituted interstate commerce.
Waterways are navigable when they are used or are susceptible of being used as highways for commerce, over which trade and travel may be conducted; they are navigable waters of the states when they form by themselves or by connecting with other waters a continued highway over which commerce may be carried on with other states or with foreign countries. The Daniel Ball, 77 U.S. (10 Wall.) 557, 563 (1870). Neither party contends that Mobile Bay and the Mobile River are not navigable waterways and thus not highways for commerce.
The United States Supreme Court has held that employees working on toll bridges over navigable waterways are engaged in interstate commerce for purposes of the application of the Fair Labor Standards Act ("the FLSA").Overstreet v. North Shore Corp., 318 U.S. 125 (1943). The Court determined that toll bridges and roads over waterways that connect to other states are *Page 520 
instrumentalities of interstate commerce and that maintaining, repairing, and operating those bridges and roads constituted being "engaged in interstate commerce." Id. at 130. The Court reasoned that if the toll bridge and roads were not properly operated and maintained they would present an obstacle to interstate commerce. Id. Thus, the Court held that the employees engaged in operating and maintaining the toll bridge so that there could be interstate passage of persons and goods over them were so closely related to that interstate movement as a practical matter that those employees must be regarded as engaged in interstate commerce. Id. at 132. See, e.g., Mitchell v. Empire Gas Eng'gCo., 256 F.2d 781, 784 (5th Cir. 1958) (summarizing cases holding that the deepening of navigable waters, the construction of retaining walls to provide harbor facilities for Naval vessels, the construction and repair of dikes and revetments on the Mississippi River, and the construction of new and relocated locks on the Gulf Intracoastal Waterway have all been held to be "commerce" within the meaning of the FLSA); VanKlaveren v.Killian-House Co., 210 F.2d 510, 513 (5th Cir. 1954) (persons engaged in the maintenance and repair of interstate instrumentalities are within the coverage of the FLSA).
Applying the reasoning of the United States Supreme Court, we hold that dredging a navigable waterway is substantially related to interstate commerce. Indeed, without dredging, the waterways would surely become impassable, and interstate commerce would be obstructed. Mobile Bay and the Mobile River are both navigable waterways and instrumentalities of interstate commerce. Failure to maintain these waterways would prevent shipping from the Gulf of Mexico to the northern portions of the State and beyond that to other states. Bean's dredges removed silt from Mobile Bay and the Mobile River to allow the passage of shipping vessels, which include vessels from both other states and from foreign countries. This dredging is necessary to keep the navigable waters open and to allow the flow of interstate commerce. Therefore, like operating a toll bridge that permits and furthers interstate commerce, dredging constitutes being engaged in interstate commerce.
In addition to Overstreet, our holding today is also supported by the United States Court of Appeals for the Seventh Circuit and by the District Court of Puerto Rico. Walling v. Great Lakes Dredge DockCo., 149 F.2d 9 (7th Cir. 1945); Cuascut v. Standard Dredging Corp.,94 F. Supp. 197 (D.P.R. 1950). In Cuascut the sole issue was the extent to which, for the purposes of the FLSA, the plaintiffs were engaged in commerce while performing dredging operations. Cuascut,94 F. Supp. at 200. The court first addressed the dredging operations being performed and found that San Juan Bay had been used for many years as a highway of interstate commerce. Id. The court further found that those dredging operations that constituted either repair, maintenance, or improvement of the bay as a highway of interstate commerce were engaging in commerce and brought the plaintiffs within the coverage of the FLSA. Id.
Analogously, the parties in this case do not dispute that Mobile Bay and the Mobile River are highways of interstate commerce. Nor do the parties dispute that Bean was removing silt from the bay and the river in order to allow passage of vessels. Thus, Bean was maintaining and improving Mobile Bay and the Mobile River as highways of interstate commerce, which constitutes being engaged in interstate commerce. *Page 521 
Additionally, in Walling, the parties stipulated that the employees on the dredges in the Great Lakes were engaged in interstate commerce and that dredging constituted interstate commerce. Walling, 149 F.2d at 10. Therefore, it was apparent to the parties in Walling that dredging constituted interstate commerce. Similarly, we also find that dredging highways of interstate commerce, such as Mobile Bay and the Mobile River, constitutes being engaged in interstate commerce.
The administrative law judge narrowly interpreted the statute to exclude dredges because, the judge reasoned, dredges do not involve foreign, international, or interstate commerce within the meaning of the statute. The administrative law judge reasoned that because §40-23-4(a)(10), Ala. Code 1975, is an exemption statute, a broad construction of the Commerce Clause cannot be applied in construing that statute. He further reasoned that the phrase "engaged in interstate commerce" must be strictly construed to include only vessels actually engaged in commerce while traveling from an Alabama port to ports in other states or countries. Furthermore, the administrative law judge reasoned that Overstreet and Cuascut, which both involved the FLSA, did not apply to this case because the FLSA is to be liberally construed in favor of ensuring coverage under the FLSA for employees.
We disagree with the administrative law judge's opinion. Even subjecting the statute to the strict construction to which it is entitled as an exemption statute, when read in its entirety the statute includes vessels that do not travel from port to port. Section 40-23-4(a)(10), Ala. Code 1975, exempts: "ships, vessels, towing vessels, or barges, or drilling ships, rigs or barges, or seismic or geophysical vessels, orother watercraft." (Emphasis added.) If the Legislature intended port-to-port activity to be the sole requirement for exemption it would not have included vessels such as seismic and geophysical vessels or drilling ships or barges, which do not necessarily travel port to port. Nor would the Legislature have made port-to-port activity an indication of a "presumption" of, rather than a requirement for, engaging in interstate commerce. Furthermore, other sections of the statute make specific exclusions or requirements when a certain activity or subject is not to be exempted.[3] Therefore, when the statute is read in its entirety, it does not require that vessels be engaged in port-to-port activity in order to be engaged in interstate commerce.
Furthermore, we recognize that the FLSA is liberally interpreted to protect employees and that tax-exemption statutes, on the other hand, are to be narrowly construed. However, the statute is not to be so narrowly construed as to defeat its purpose, which is to allow certain tax exemptions for interstate activities. We find it difficult to reconcile the fact that workers on a dredge, engaged in dredging a navigable waterway, are engaged in interstate commerce for the purposes of the FLSA, while the ship performing the dredging is not. Therefore, it follows that if employees of a dredge are engaged in interstate commerce, the dredge must also be so engaged.
Moreover, we also recognize that the meaning of interstate commerce for similar transactions should not differ drastically from jurisdiction to jurisdiction. We acknowledge the analogous commercial and industrial tax-exemption statute enacted *Page 522 
by the Virginia legislature. Va. Code Ann. § 58.1-609.3.4 (Michie 2002). However, unlike § 40-23-4(a)(10), Ala. Code 1975, Virginia's statute specifically mentions dredges. It reads: "This exemption shall include dredges, their supporting equipment, attendant vessels, and fuel and supplies for use or consumption aboard such vessels, provided the dredges are used exclusively or principally in interstate or foreign commerce." Va. Code Ann. § 58.1-609.3.4.
While our Legislature did not specifically note that dredges were exempt from sales taxes for their fuel and supplies as previously discussed, dredges are an integral part of continuing interstate commerce upon Mobile Bay and the Mobile River. Therefore, the requirements of § 40-23-4(a)(10), Ala. Code 1975, are satisfied and Bean's dredges should be exempt from fuel-and-supplies sales tax as provided by §40-23-4(a)(10).
 III. State Department of Revenue v. Orange Beach Marina, Inc.
The Department of Revenue and the lower court relied upon StateDepartment of Revenue v. Orange Beach Marina, Inc., 699 So.2d 1279
(Ala.Civ.App. 1997). However, the facts in that case are substantially different from the facts of this case. In Orange Beach Marina, the marina challenged the sales tax on diesel fuel sold to vessels that traveled into foreign waters but that did not travel to another state's port or to a foreign port under § 40-23-4(a)(10), Ala. Code 1975. 699 So.2d at 1280-81.
The marina had three basic types of diesel-fuel customers: charter fishing vessels, vessels owned by businesses, and pleasure craft. 699 So.2d at 1280. For the tax period in question, 40% of the marina's sales of diesel fuel was to charter fishing vessels, 40% to pleasure craft, and 20% to vessels owned by businesses. Id. Those vessels traveled into federal and international waters but did not travel to foreign ports or to ports of other states. Id. The only fact the marina provided for its argument that it met the requirements for the sales-tax exemption was that the vessels traveled into foreign waters. The facts of that case did not demonstrate that any other interstate activity was involved. The Court of Civil Appeals concluded that charter fishing vessels that did not travel to another state's port or to a foreign port were not engaged in interstate commerce and that vessels owned by businesses and those used for pleasure also were not engaged in interstate commerce and were thus not exempt from the sales tax. Orange Beach Marina, 699 So.2d at 1281.
We first note that dredges are physically and materially different vessels than are charter fishing vessels, "business vessels," and pleasure craft. The Court of Civil Appeals' decision is limited to those three types of vessels; it does not apply to dredges, which have a completely different purpose. It is understandable that for a fishing vessel to be engaged in interstate commerce it must visit a port outside of Alabama; it is also understandable that business vessels and pleasure craft cannot be considered engaged in interstate commerce when they merely enter federal or foreign waters and then return to an Alabama port. However, dredges are significantly different. A dredge, as previously stated, has a substantial relationship with interstate commerce because of the service it performs in removing silt to maintain interstate channels of commerce.
In addition to Orange Beach Marina, the circuit court relied upon Statev. Zewen, 270 Ala. 52, 116 So.2d 373 (1959). Yet that case is also inapplicable. Zewen involved only shrimp and fishing boats that did not transport cargo to ports in other states or to foreign ports. Id. *Page 523 
Furthermore, the statute being interpreted in Zewen, Title 51, § 755(r), Code of Alabama (1940), is similar in purpose to §40-23-4(a)(10), Ala. Code 1975, but contains very important and distinct differences.
The language of the statute being interpreted in Zewen requires that the vessels seeking exemption be "`plying on the high seas either in intercoastal trade between ports in the State of Alabama and ports in other states of the United States or its possessions or in foreign commerce between ports in the State of Alabama and ports in foreign countries.'" 270 Ala. at 54, 116 So.2d at 374. This language is significantly different from the language of § 40-23-4(a)(10), Ala. Code 1975, which "presumes" that the transportation of cargo between Alabama ports and ports of other states or other countries is engaging in commerce. There is no such presumption in Title 51, § 755(r), Code of Alabama (1940); rather, the language states that travel from port to port is a requirement for the exemption. Therefore, Zewen is inapplicable to this case. For these reasons, we conclude that Orange Beach Marina andZewen are inapplicable to this case and that Bean's dredges were engaged in interstate commerce pursuant to § 40-23-4(a)(10), Ala. Code 1975, and are thus exempt from fuel-and-supplies sales tax.
 IV. Certificates of Consumption of Supplies and Fuel for Vessel Engaged in Interstate Commerce
Section 40-23-4(a)(10), Ala. Code 1975, provides that proof that the fuel and supplies were purchased for use or consumption aboard vessels engaged in interstate commerce may be had by the captain's securing a signed certificate stating that the fuel and supplies were being purchased for use or consumption aboard vessels engaged in interstate commerce. The State points out that the captains of Bean's dredges failed to acquire such certificates at the time of the purchases. However, the State fails to offer any argument that a certificate is required for exemption under § 40-23-4(a)(10), Ala. Code 1975. While this argument was raised, neither party asserted that a certificate to the effect that the fuel and supplies were being purchased for use on a vessel engaged in interstate commerce was required for the exemption to apply. Therefore, we need not address this issue.
 Conclusion
The judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Houston, See, Lyons, Brown, Johnstone, Harwood, and Woodall, JJ., concur.
Moore, C.J., dissents.
[1] Zewen was decided before the 1987 amendment to the exemption statute; that amendment substituted the language "ships and towing vessels plying the high seas or gulf intracoastal waterway either in intercoastal trade between ports in the state of Alabama and ports in other states of the United States" with the language "ships, vessels, towing vessels, or barges, or drilling ships, rigs or barges, or seismic or geophysical vessels, or other watercraft . . . engaged in foreign or international commerce or in interstate commerce" and added the presumption that transportation of cargo between ports in Alabama and ports in other states or foreign countries constituted interstate commerce.
[2] We need not — and do not — determine that there was no port-to-port activity in this case. The record indicates that Bean's contract with the Corps allowed it to remove its dredges during the contract period and send them to other states. The record also indicates that Bean did in fact remove the Eagle I from Alabama on several occasions during the contract.
[3] See § 40-23-4(2), cottonseed meal excluded from definition of "fertilizer"; § 40-23-4(A)(3),(4) and (7), specifically limiting exclusions; § 40-23-4(a)(10), providing specific requirements for seismic and geophysical vessels and passenger vessels.