THOMAS, Judge.
In 1999, Leah Mitchell purchased a manufactured home. She financed that purchase and executed a Manufactured Home Retail Installment Contract and Security Agreement (“the installment contract”). Green Tree-AL LLC (“Green Tree”) was later assigned the installment contract, under which it was granted the right to repossess the manufactured home *178 upon any default on the installment contract.
Mitchell placed the manufactured home on real property that she owned in Oden-ville. Mitchell failed to pay ad valorem taxes on that real property. As a result, on May 10, 2005, the real property was sold pursuant to Ala.Code 1975, § 40-10-1 et seq. Dominion Resources, L.L.C. (“Dominion”), was the tax-sale purchaser. Dominion received a tax deed to the property on May 13, 2008. The tax deed describes the real property but makes no mention of the manufactured home.
After it received its tax deed, Dominion filed a successful ejectment action against Mitchell. Dominion received a judgment in its favor awarding it the right to possession of the real property purchased at the tax sale. After Mitchell was ejected from the property, Dominion performed maintenance and clean up on the real property and the manufactured home, including removing trash and debris, pressure washing the manufactured home, performing yard maintenance, and covering the roof of the manufactured home to prevent further damage from exposure to the elements. Dominion claimed that it had expended in excess of $10,000 on the maintenance it had performed on the real property and the manufactured home. In all, including attorney fees and insurance payments on the manufactured home, Dominion claimed $36,728.99 in expenses related to the real property and the manufactured home on the property.
Mitchell also defaulted on the installment contract. As a result, Green Tree desired to repossess the manufactured home. Dominion opposed Green Tree’s right to possession of the manufactured home, arguing that Dominion had purchased both the real property and the manufactured home at the tax sale and that, in order for Green Tree to gain possession of the manufactured home, Green Tree was required to redeem the manufactured home pursuant to Ala.Code 1975, § 40-10-120 et seq., by paying Dominion $36,723.99. In May 2009, Green Tree filed a detinue action against Dominion, seeking possession of the manufactured home.
Dominion answered and filed a counterclaim. Subsequently, Dominion filed a motion for a summary judgment as to Green Tree’s claims. In its motion, Dominion argued that the tax deed had conveyed to it both the real property and the manufactured home because, pursuant to Ala.Code 1975, § 40 — 11—l(b)(15) and (c)(2), the manufactured home had been subject to ad valorem taxation and had been taxed “as realty.” Based on this argument, Dominion contended that it owned the manufactured home as part of the real property conveyed to it in the tax deed and that Green Tree, in order to gain possession of the manufactured home, was required to redeem the manufactured home under the procedures outlined in § 40-10-120 et seq. by paying Dominion $36,723.99.
Green Tree opposed Dominion’s motion, arguing that the manufactured home was not transferred along with the real property by the tax deed because, it contended, the manufactured home remained personal property because its certificate of title had not been canceled pursuant to the former version of Ala.Code 1975, § 32-8-30(c) (now codified with changes not pertinent to this appeal at Ala.Code 1975, § 32-20-20(b)).[1] Green Tree further contended *179 that it was not subject to the redemption procedures set out in § 40-10-120 et seq. because those procedures applied to real property and Green Tree had no interest in the real property sold at the tax sale; Green Tree said that its sole interest was in the manufactured home, which, Green Tree contended, retained its status as personal property despite its tax treatment. Green Tree further denied that it would owe Dominion the entire $36,723.99 Dominion claimed even if Green Tree were required to “redeem” the manufactured home under § 40-10-120 et seq.
The trial court agreed with Dominion that the manufactured home had been taxed as realty under § 40 — 11—l(b)(15) and (c)(2).[2] Thus, the trial court concluded that the tax deed had conveyed to Dominion the real property and the manufactured home. As a result, the trial court determined that Green Tree was required to pay Dominion the entire $36,723.99, plus an attorney fee and interest, in order to redeem the manufactured home. Green Tree appeals from that judgment.[3]
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
This case involves the construction of several statutory provisions and a determination of their import based upon the interplay of those provisions. Thus, we employ the rules of statutory construction.
“ ‘It is this Court’s responsibility to give effect to the legislative intent whenever that intent is manifested. State v. Union Tank Car Co., 281 Ala. 246, 248, 201 So.2d 402, 403 (1967). *180 When interpreting a statute, this Court must read the statute as a whole because statutory language depends on context; we will presume that the Legislature knew the meaning of the words it used when it enacted the statute. Ex parte Jackson, 614 So.2d 405, 406-07 (Ala.1993). Additionally, when a term is not defined in a statute, the commonly accepted definition of the term should be applied. Republic Steel Corp. v. Horn, 268 Ala. 279, 281, 105 So.2d 446, 447 (1958). Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says. Ex parte Shelby County Health Care Auth., 850 So.2d 332 (Ala.2002).’
“Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003). In addition, ‘ “ ‘ “[t]here is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.” ’ ” ’ Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 970 (Ala.Civ.App.2008) (quoting Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000), quoting in turn other cases).”
IEC Arab Alabama, Inc. v. City of Arab, 7 So.3d 370, 375 (Ala.Civ.App.2008).
Furthermore, when an appellate court construes a statute, “it is [that court’s] duty to ascertain and effectuate the legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained.” Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 248 (Ala.1992). Although this court’s primary objective is to derive the legislative intent from the expression in the statute, “[w]here more than one statute is involved, ... they should be construed in harmony with other statutes in effect, so far as is practical.” Siegelman v. Folmar, 432 So.2d 1246, 1249 (Ala.1983). Thus, we must “look not only to the language of the statute, ... but also to the purpose and object of the enactment, and its relation to other laws and conditions which may arise under its provisions.” Siegelman, 432 So.2d. at 1246.
A manufactured home is unquestionably personal property at the time of its sale. See § 32-20-20(a) (effective January 1, 2010, and requiring a certificate of title for any manufactured home of model year 1990 or later and not more than 20 years old) and former § 32-8-30(b) (effective until January 1, 2010, and requiring a certificate of title for any manufactured home beginning with model year 1990); see also Sharp v. Sharp, 540 So.2d 1373, 1375 (Ala.1989) (determining, after applying common-law principles governing whether an item has become a fixture, that a manufactured home owned by a life tenant had not become a fixture to the remainderman’s real property), and Ala.Code 1975, § 7-9A-109 (explaining the scope of Article 9A of the Alabama Uniform Commercial Code as encompassing transactions creating a security interest in personal property or fixtures) and § 7-9A-334(e)(4) (providing for the priority of a security interest in a manufactured home that arises in a manufactured-home transaction). Under Alabama law, a certificate of title must be issued as to a manufactured home. § 32-20-20(a); former § 32-8-30(b). Generally, the transfer of ownership of a manufactured home is accomplished through the execution of “an assignment and warranty of title to the transferee in the space provided therefor on the certificate [of title].” *181 Ala.Code 1975, § 32-20-30(a); former § 32-8-44(a).
A lienholder like Green Tree perfects its lien on a manufactured home by having its security interest noted on the certifícate of title. Ala.Code 1975, § 32-20-41(b), former § 32-8-61(b), and § 7-9A-311; see also Ala.Code 1975, § 32-20-26(a)(3) and former § 32-8-39(a)(3). Compliance with the certificate-of-title statute — specifically, former § 32-8-61 (b) and its successor § 32-20-41(b) — ensures the priority of the lien on the manufactured home over the owner or encumbrancer of the real property on which the manufactured home sits. Ala.Code 1975, § 7-9A-334(e)(4). Under the Alabama Uniform Commercial Code (“UCC”), Ala.Code 1975, § 7-1-101 et seq., the holder of a perfected, priority security interest in a fixture, like a manufactured home, may remove the fixture from the real property on which it sits upon default by the purchaser, and the secured party will be liable only for any physical injury caused by the removal of the fixture and not any diminution in the value of the real property that might result from the removal. Ala.Code 1975, § 7-9A-604(c) & (d).
If a manufactured home is affixed to real property and the owner of the real property and of the manufactured home are identical, the owner may request that the certificate of title to the manufactured home be canceled. § 32-20-20(b); former § 32-8-30(c). In order to have the certificate of title canceled, however, the owner of the manufactured home must, among other things, present to the Department of Revenue a lien release from any lienholder noted on the certificate of title. § 32-20-20(b)(2) (requiring a lien release or a bond); former § 32-8-30(c)(4) (requiring a lien release). The obvious reason for this requirement is to protect the lienholder’s security interest in the manufactured home.
A manufactured home owned by one person but placed on the land of another is subject to the registration requirements of Ala.Code 1975, § 40-12-255, and is not subject to ad valorem taxation. However, Alabama law treats a manufactured home placed on property owned by the manufactured-home owner “as realty” for purposes of ad valorem taxation; under § 40-11-l(b)(15), “[a]ll manufactured homes located on land owned by the manufactured home owners, except those manufactured homes rented or leased for business purposes, other than those manufactured homes in the inventory of a manufactured home dealer or manufacturer,” are subject to ad valorem taxes. Further, § 40-ll-l(c)(2) provides that those manufactured homes subject to ad valorem taxation under subsection (b)(15) “shall be taxed as realty.” The regulations promulgated by the Department of Revenue explain that such a manufactured home “shall be subject to assessment for ad valorem tax purposes” and “shall be considered as [an] improvement! ] to realty.” Ala. Admin. Code (Dep’t of Rev.), r. 810-4-2-.02(l). Thus, it appears that the real property is assessed for ad valorem taxation purposes as if the manufactured home is an improvement to the real property, like any other structure that might be placed on real property.
A review of Alabama’s tax code and administrative regulations pertaining to the tax treatment of manufactured homes on real property owned by the manufae-tured-home owner does not entirely explain whether the ad valorem tax liability attaches to the manufactured home or to the real property upon which the manufactured home, which is assessed as an improvement to the real property, is located. However, one Alabama case indicates that an improvement to real property is *182 not “subject to [a] distinct and separate tax lien[]” from the real property upon which it is located; thus, it appears that the lien attaches to the real property. See State v. Mortgage-Bond, Co. of New York, 224 Ala. 406, 408, 140 So. 365, 367 (1932). However, Ala. Admin. Code (Dep’t of Rev.), r. 810-4-2-.09(4), states that any delinquent ad valorem taxes assessed on a manufactured home are to be paid by the lienholder in those cases where a lienholder removes the manufactured home, presumably after default by the owner,[4] indicating that the manufactured home is assessed ad valorem tax in a way permitting the separation of the amount of tax due on the manufactured home and the amount due on the real property upon which the manufactured home is situated.
The question of most import to this particular appeal is whether the tax treatment of certain manufactured homes “as realty” by § 40 — 11—l(b)(15) and (c)(2) amounts to the manufactured home’s losing its status as personal property. Green Tree argues that the tax treatment of a manufactured home does not convert it from personal property to real property and that, therefore, the tax sale and tax deed did not convey the manufactured home to Dominion. Dominion argues that the tax treatment of the manufactured home is the only relevant inquiry and that the treatment of the manufactured home as realty by the tax code resulted in its being included with the real property that was conveyed to Dominion by the tax sale and resulting tax deed.
Green Tree argues that the treatment of the manufactured home “as realty” for tax-assessment purposes did not serve to convert the manufactured home in question into real property for all purposes. Thus, Green Tree argues that the tax deed could not have conveyed title to the manufactured home because the manufactured home at all times retained its status as personal property. To support its position, Green Tree first relies on bankruptcy cases construing Alabama law regarding when a manufactured home loses its status as personal property. See In re Manning (No. 07-70190, August 2, 2007) (Bankr.N.D.Ala.2007) (not reported in B.R.); In re Moss, (No. 07-10126, April 4, 2007) (Bankr.S.D.Ala.2007) (not reported in B.R.). Both Manning and Moss hold that a manufactured home is a motor vehicle and therefore personal property under Alabama law until its certificate of title has been canceled pursuant to former § 32-8-30(c).
“Under Alabama law, a mobile home is considered to be a ‘motor vehicle’ unless ‘(1) the mobile home is affixed to real property, (2) the mobile home and real property are titled in the same individual’s name, and (3) the owner cancels the certificate of title for a vehicle with regard to the mobile home. Ala.Code § 32-8-30(c)(1989).’”
In re Manning, quoting In re Moss.
Green Tree further relies on former § 32-8-30(b) (now codified with changes not relevant to this appeal at § 32-20-20(a)) to bolster its argument that the manufactured home at all times remained personal property under Alabama law. *183 Former § 32-8-30(b) required that every manufactured home model year 1990 or newer be issued a certificate of title.[5] Subsection (c) of former § 32-8-30 provided a means by which an owner of a manufactured home placed on real property owned by the same person could seek cancellation of the certifícate of title for the manufactured home. See also § 32-20-20(b). One of the requirements for the cancellation of the certifícate of title under former § 32-8-30(c)(4) was a lien release from any lienholder recorded on the face of the certificate of title. See also § 32-20-20(b)(2) (requiring a lien release or the posting of a bond in accordance with Ala. Code 1975, § 32-20-34). The evidence presented to the trial court was that the certificate of title for the manufactured home had not been canceled and that Green Tree was listed on the certificate of title as a lienholder.[6] According to Green Tree, permitting the treatment of the manufactured home as realty the purpose of assessing of ad valorem taxes to convert the manufactured home to real property from personal property would strip a secured lienholder like Green Tree of its rights under the UCC and “render the purpose and intent behind the Uniform Certificate of Title and Anti-Theft Act (and the current statute relating to manufactured homes, The Alabama Manufactured Home Certificate of Title Act) and the accompanying ability to detitle a manufactured home, of little legal import.”
On the other hand, Dominion argues that the tax deed conveyed the manufactured home along with the real property. Dominion bases its argument on its belief that the treatment of the manufactured home as realty by § 40 — 11—l(b)(15) & (c)(2) resulted in the tax lien’s attaching to the manufactured home and ultimately the conveyance of the manufactured home along with the real property via the tax sale and the tax deed. Dominion maintains that, under § 40 — 11—l(b)(15) & (c)(2), the treatment of the manufactured home as realty for purposes of ad valorem taxation results in the conversion of the manufactured home to real property and in the inescapable conclusion that the manufactured home was conveyed with the real property via the tax sale and tax deed. Because the Alabama tax code and the administrative regulations of the Department of Revenue require that the manufactured home be taxed as realty and as an improvement to real estate, says Dominion, the fact that the manufactured home was once considered personal property and was separately titled is of no consequence. The tax lien, which was superior to Green Tree’s security interest, see Ala.Code 1975, § 40-1-3 (creating liens for taxes and declaring them superior to all other liens), and the tax deed, contends Dominion, served to extinguish Green Tree’s security interest subject to its right to redeem the entire parcel of real property.
*184 When one compares the treatment of certain manufactured homes “as realty” for tax purposes based on the language of the tax statutes with the clear import of the former version of the Uniform Certificate of Title and Anti-Theft Act and the current statute relating to manufactured homes, the Alabama Manufactured Home Certificate of Title Act, the conflict in the characterization of a manufactured home is not immediately reconcilable. The cases from other jurisdictions relied on by both Green Tree and Dominion, although very similar in nature, do not help resolve the dilemma created by our particular statutes. Thus, we must consider the interplay of Alabama statutes relating to the ad valorem taxation of certain manufactured homes and the certifieate-of-title statutes relating to all manufactured homes.
We know that, upon its sale, a manufactured home is personal property for which a certificate of title is required. § 32-20-20(a); former § 32-8-30(b). We also know that an owner of a manufactured home who has placed the manufactured home on land he or she owns is permitted to seek cancellation of the certificate of title for the manufactured home, rendering the home a fixture to the real property, subject to certain conditions and requirements, including, most pertinent here, the requirement that any lienholders release any liens on the manufactured home. § 32-20-20(b)(2) (providing also that the owner of the manufactured home may opt to post a bond instead of securing a lien release); former § 32-8-30(c)(4). The intention behind this requirement is clear: to.protect the lienholder from having its lien extinguished or diminished in any way by the action of the owner of the manufactured home to make the manufactured home a fixture to the real property.
Notably, § 40-1-1(13) defines “real property” as “[l]and and all things thereunto pertaining, all structures, and all things annexed and attached thereto which would pass to a vendee by conveyance of the land or property.” The requirement that manufactured homes that satisfy § 40 — 11—l(b)(15) be “taxed as realty” would not be necessary if those manufactured homes were already considered real property under the definition in § 40-1-1(13). The exclusion of manufactured homes, which are titled personal property, from the definition of “real property” is supported also by the fact that a transfer of a manufactured home is typically achieved through a transfer of the certificate of title, see § 32-20-30; former § 32-8-44, and not through a transfer of real property by deed.
To hold as Dominion urges would serve to defeat the priority security interest that Green Tree has in the manufactured home. This would run counter to the letter and purpose of the Uniform Certificate of Title and Anti-Theft Act (and the current statute, the Alabama Manufactured Home Certificate of Title Act) and, incidentally, the UCC. To hold as urged by Green Tree would not do any violence to the letter of the tax code, which, it appears, treats the manufactured home as realty for the purpose of assessing ad valorem taxes but does not convert it to real property.
Based on our review of the statutory provisions at issue, we conclude that the treatment of certain manufactured homes “as realty” for purposes of ad valo-rem taxation does not serve to convert them to real property. A manufactured home is personal property unless and until the certificate of title is canceled. To hold otherwise would render former § 32-8-30(c) and § 32-20-20(b) meaningless and provide no field of operation for their application. See Smith v. Purvis, 474 So.2d 1131, 1133 (Ala.Civ.App.1985) (indicating that a court should attempt to “harmon *185 ize[ ] and reconcile[ ] [competing] statutes to give each one a field of operation”). Because a manufactured home is personal property, it cannot be conveyed by deed and must be conveyed by transferring the certificate of title as required by § 32-20-30(a) and former § 32-8-44(a). Accordingly, we hold that Dominion did not acquire the manufactured home by virtue of the May 13, 2008, tax deed.
Although we have determined that the manufactured home was not converted to real property by virtue of its tax treatment under § 40-11-1 (b)(15) & (c)(2) and that it was therefore not conveyed to Dominion by the tax deed for the real property, further issues remain to be considered. The summary judgment in favor of Dominion required Green Tree to “redeem” the manufactured home consistent with the requirements of § 40-10-120 et seq. Specifically, the trial court ordered that Green Tree pay Dominion $36,723.99 in order to recover possession of the manufactured home. Green Tree argues that, because the manufactured home is personal property and not real property, Green Tree is not required to redeem the manufactured home under the procedures outlined in § 40-10-120 et seq. or, if it is, that it is not required to redeem the real property as well as the manufactured home. In addition, as part of the amount the trial court ordered as the redemption amount, Dominion sought and received a $9,440 attorney fee. Green Tree argues that the attorney-fee award is not permitted under Ala.Code 1975, § 40-10-83, the statute upon which Dominion relies, for several reasons. Finally, Green Tree argues that a question of fact exists regarding the $10,000 in “improvements” that Dominion alleged it performed on the manufactured home and real property, thus precluding a summary judgment in favor of Dominion for the entire $10,000 in “improvements.”
Because we have determined that title to the manufactured home never vested in Dominion, Green Tree asks us • to further conclude that the redemption statutes, which it says apply only to real property, do not apply in this situation and that Green Tree need not pay Dominion $36,723.99 in order to recover possession of the manufactured home. Dominion, on the other hand, asserts that the redemption statute, specifically, § 40-10-83, can be used to redeem personal property sold for taxes. However, the title of the chapter containing § 40-10-83 is titled “Sale of Land” and concerns the sale of land for delinquent taxes. Thus, the applicability of § 40-10-83 to personal property appears doubtful. Dominion provides no actual authority applying § 40-10-83 to any attempt to “redeem” personal property sold for taxes. The tax code does provide for the sale of personal property for taxes in Ala.Code 1975, § 40-5-14; however, nothing in that statute or those in proximity to it provide for redemption of personal property after sale of such property for delinquent taxes.
Accordingly, we agree with Green Tree that the redemption statutes apply to the redemption of land, or real property, which the manufactured home is not. Thus, those statutes cannot be used in this situation to determine the amount that Green Tree might owe Dominion in order for Green Tree to recover possession of the manufactured home. We therefore reverse the summary judgment in favor of Dominion requiring Green Tree to redeem the manufactured home by paying Dominion $36,723.99.[7]
*186 However, in reversing the summary judgment in favor of Dominion, we make no determination regarding whether Green Tree may be required to reimburse Dominion for the amount of the ad valorem taxes attributable to the manufactured home[8] and/or, pursuant to some equitable theory, for some of the expenses related to Dominion’s upkeep of the manufactured home during the time Dominion claimed possession. We conclude that such issues are not yet ripe for review, because neither party urged below that Green Tree was required to pay a particular, lesser amount to Dominion if Green Tree were permitted to take possession of the manufactured home without resort to the redemption statutes. Because the judgment under review is a summary judgment, the parties may further develop arguments relating to any amount of money that Green Tree would be required to pay Dominion in order to recover possession of the manufactured home on remand.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. In 2009, the Alabama Legislature amended and renumbered those sections of the Uniform Certificate of Title and Anti-Theft Act, codified at Ala.Code 1975, § 32-8-1 et seq., relating to certificates of titles for manufactured homes as the Alabama Manufactured Home Certificate of Title Act, codified at Ala. *179 Code 1975, § 32-20-1 et seq., effective January 1, 2010.

. The trial court also determined that the manufactured home had been affixed to the real property. Although the record contains references to photographs that depict the manufactured home, the record does not contain any photographs. Because neither party relied on common-law fixture analysis in the trial court or in this court, the question whether the manufactured home was affixed to the real property is not before us. However, for purposes of our analysis of the issues that are before us, we assume that the manufactured home was affixed to the real property.

. The trial court entered two orders, one on July 7, 2010, and the other on July 9, 2010. On August 5, 2010, Green Tree sought clarification regarding which order of the trial court was the intended order, sought review of both orders, and requested that the trial court certify one of the orders as a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P. In response to Green Tree's motion, the trial court entered an order on November 1, 2010, that incorporated the July 9, 2010, order as the intended order of the court, dismissed Dominion’s pending trespass claim without prejudice; certified the order as final pursuant to Rule 54(b), out of an abundance of caution; and denied all other aspects of Green Tree’s motion.

. Alabama Admin. Code (Dep't of Rev.), r. 810-4-2-09(4), reads:
"Lien holders are required [within ten (10) days of moving any manufactured home] to notify, in writing, the county registration official of the removal of said manufactured home. The county registration official, upon receipt of such written notification shall send [within ten (10) days] a notice of any delinquent taxes or registration fees to the lien holder. Lien holders shall pay delinquent taxes or registration fees within thirty (30) days of being notified."

. As of January 1, 2010, § 32-20-20(a) applies the same requirement.

. On appeal, Dominion argues that only one of the three certificates of title for the manufactured home Green Tree sought possession of in its complaint is in the record, Dominion did not base its summary-judgment motion on the lack of the other two certificates of title, so we are precluded from considering the failure of Green Tree to include all three certificates of title in its submissions to the trial court as a basis for affirming the summary judgment in Dominion’s favor. See Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003) (indicating that a court may affirm a judgment for any valid legal ground unless due-process considerations are concerned, like "where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant’s evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element”).

. Based on our conclusion that the redemption statutes do not apply, we pretermit discussion of Green Tree’s other arguments concerning whether a question of fact regarding *186 the value of the alleged "improvements” existed and whether Dominion was entitled to an attorney fee under § 40-10-83, one of the statutes concerning redemption of lands sold for taxes.

. As noted above, Ala. Admin. Code (Dep’t of Rev.), r. 810-4-2-.09(4), provides that a lien-holder that removes a manufactured home must notify the county registration official of the removal and that the registration official must then send a notice of any delinquent taxes or registration fees to the lienholder, who must pay the delinquent taxes or fees within 30 days. Thus, the amount of ad valo-rem taxes assessed on the manufactured home should be available and could be considered in determining the amount of money, if any, Green Tree should pay to Dominion to recover possession of the manufactured home.