THOMAS, Judge,
concurring in the result.
Although I agree that the judgment of the Montgomery Circuit Court affirming the award by the State Health Planning and Development Agency (“SHPDA”) through the Certificate of Need Review Board (“CONRB”) of a Certificate of Need (“CON”) to Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (“Brookwood”) to construct a freestanding emergency department (“FED”) should be affirmed, I would approach two of the arguments asserted by Affinity Hospital, LLC, d/b/a Trinity Medical Center of Birmingham (“Trinity”), differently. As a result, I must concur in the result.
Trinity’s first and main argument is premised on statutory-construction principles. Trinity does not, and, arguably, cannot, argue that SHPDA is not endowed with the right, and indeed the duty, to determine whether a project for which a CON is sought is consistent with the State Health Plan (“the SHP”). See Ala.Code 1975, § 22-21-264(l)a (providing that the criteria to be utilized by SHPDA in reviewing applications for CONs should include “[consistency with the appropriate State Health Facility and services plans effective at the time the application was received ..., which shall include the latest approved revisions of [specified] plans,” including the SHP). What Trinity does argue is that SHPDA’s review of whether a project is consistent with the SHP is limited to determining whether the proposed project “track[s] an express provision in the [SHP].” Trinity’s reply brief, p. 10. Trinity contends that the legislature’s use of the different terms “consistent” and “inconsistent” in various statutes governing SHPDA review, see, e.g., Ala.Code 1975, § 22-21-266(1) (prohibiting the issuance of a CON unless a proposed facility or service is “consistent with” the SHP), and § 22-21-263(a) (stating that no institutional health services “which are inconsistent with the [SHP]” are permitted), is meaningful and that the terms have distinctly different meanings; Trinity relies on the principle of statutory construction that requires us to presume that the use of different terms by the legislature in the same statute implies that the terms have different meanings and are not redundant. See Surtees v. VFJ Ventures, Inc., 8 So.3d 950, 975 (Ala.Civ.App.2008) (“The courts must presume that ... the legislature intended that each word of [a] statute have effect, and we must also presume that the legislature did not include meaningless language or redundancies in the statute.”). Trinity further suggests specifically that *218 “inconsistent” means “contradicting an express provision in the [SHP].” I am not convinced.
The terms “consistent” and “inconsistent” are but two forms of the word “consistent.” That is, “inconsistent” is the opposite or antonym of “consistent,” created by the addition of the prefix “in,” which, in this context, means “not.” Although the principles of statutory construction require us to assume that the legislature used the terms it employed in the statute deliberately and did not use redundant terms, we must also construe those terms that are not defined by the legislature by using the plain, ordinary, and commonly understood meanings of those terms. Pleasure Island Ambulatory Surgery Ctr., LLC v. State Health Planning & Dev. Agency, 38 So.3d 739, 742 (Ala.Civ.App.2008) (quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003)). The dictionary definition of “consistent” is “marked by harmony, regularity, or steady continuity: free from variation or contradiction” or “marked by agreement: compatible.” Merriamr-Webster’s Collegiate Dictionary 266 (11th ed. 2003) “Inconsistent” is defined as “not compatible with another fact or claim” or “containing incompatible elements.” Id. at 631. Thus, when the legislature required that SHPDA consider whether a proposed service or facility that is the subject of a CON application is consistent with the SHP or whether it is inconsistent with the SHP, it required the same analysis. The question SHPDA must ask is whether the service or facility proposed in the CON application is compatible with or incompatible with the SHP.
Nothing in the language of the several statutes indicates that SHPDA may approve a CON only if the SHP directly addresses the service or facility proposed in the CON application. That is, based on the language used in some of the statutes, it does not appear that SHPDA may approve only those proposed services or facilities that “track an express provision in the SHP”; instead the language used by the legislature permits SHPDA to determine that a proposed service or facility is consistent with the SHP if it is compatible with the SHP. Likewise, although the language in some of the statutes prohibits the approval of a CON when the proposed service or facility is inconsistent with the SHP, that language requires SHPDA to determine whether the proposed service or facility is incompatible with the SHP and does not confine its review to determining whether a proposed service or facility “conflicts with an express provision in the SHP.”
Because the terms “consistent” and “inconsistent” are undefined in the statutes, I read the statutes to allow SHPDA to determine whether a proposed service or facility is compatible or incompatible with the SHP. No language used in the statutes leads me to the conclusion that those terms have different meanings than their plain, ordinary, and commonly understood meanings. I cannot read into the statutes words that are not there or construe the terms used by the legislature as narrowly as Trinity would have us do.
Furthermore, regarding the requirement that SHPDA consider the “locational appropriateness” of the proposed facility, § 22-21-264(4)f, Trinity argues that SHPDA could not have determined such appropriateness because, at the time of the hearing before the hearing officer, Brook-wood did not have proof that it had the right to acquire the property at the location it had proposed to build the FED. It is without question that Brookwood could not have purchased the property without running afoul of § 22-21-265 and Ala. Admin. Code (SHPDA), r. 410-1-2-.19, which prohibit an entity from acquiring, constructing, or operating a new health ser *219 vice before receiving a CON; “acquisition” is defined in § 22-21-260(1) as “[obtaining the legal equitable title to a freehold or leasehold estate or otherwise obtaining the substantial benefit of such titles or estates, whether by purchase, lease, loan or suffrage, gift, devise, legacy, settlement of a trust or means whatever, and shall include any act of acquisition.” See Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So.2d 253, 264 (Ala.2002) (considering a similar argument relating to whether an entity had standing to seek a CON when it did not have legal title to beds for which it sought that CON). Because a party seeking a CON cannot acquire title to the property upon which it intends to construct a new health-care facility before receiving a CON, the decision that a location is appropriate is often based on information regarding a tentative location, which may not always be the final location of the project.
Trinity argues that Brookwood could have continued in effect an option to purchase the property, which it had held through a development agency, before the date of the hearing before the hearing officer. It is not within our province to question the business decisions made by Brookwood. Brookwood presented evidence indicating that it felt confident that it could secure the property originally planned for the site or other nearby property. Based on the evidence before the hearing officer, the hearing officer and SHPDA concluded that the location Brook-wood proposed is an appropriate location for the proposed FED. I agree that the evidence supports that determination.
If Brookwood cannot secure the location it originally proposed as a site for the FED, it may seek review of a proposed project modification under Ala. Admin Code (SHPDA), r. 410-l-10-.03(l)(b), which provides that in order to make a change in a project after a CON has been secured, an application must be made in writing to SEPDA. A party seeking approval of a change in a project is required to certify that all parties in the underlying CON proceeding have been provided notice of the change application. Id. According to the rule, a proposed change must be reviewed, depending on the level of the change, by the executive director of SHPDA or by the full CONRB. Ala. Admin. Code (SHPDA), r. 410-1-10-.03(2). Thus, if the FED project must be relocated, Brookwood, as it admitted at oral argument, must seek approval from SHPDA of that change to the project.
In conclusion, I conclude that the language of the relevant statutes permits SHPDA to consider whether a proposed project is compatible with or incompatible with the SHP and does not limit SHPDA to granting a CON for a project only if the health service or facility is specifically referenced in the SHP. I also conclude that the locational appropriateness of the proposed FED was properly considered and found to exist, despite the fact that Brook-wood does not have the right to the property at the exact location it proposed to construct the FED. Accordingly, I concur in the result of the main opinion.